[Civ. No. 20002. Fourth Dist., Div. Two. Jan. 4, 1979.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
THOMAS K. SLOTTEN, Respondents.

44

**COUNSEL**

James J. Vonk, Robert M. Jakob, Arthur Hershensen and Frank Evans for Petitioner.

John H. Larson, County Counsel (Los Angeles), Milton J. Litvin, Mary Carol Scherb, Deputy County Counsel, Burt Pines, City Attorney (Los

Angeles), John T. Neville, Senior Assistant City Attorney, Daniel U. Smith, Deputy City Attorney, Grancell, Kegel & Tobin and David E. Lister as Amici Curiae on behalf of Petitioner.

Charles L. Swezey, Thomas J. McBirnie, Frank H. Batlin, William B. Donohoe, Dexter W. Young and Richard W. Younkin for Respondents.

Mart & Ordas, Michael J. McClain, Dale E. Ordas, William L. Veen and Clark G. Leslie as Amici Curiae on behalf of Respondents.

## OPINION

**TAMURA, J.—** ▇▇▇ The sole question presented by this proceeding is whether an industrially injured municipal employee is entitled to the vocational rehabilitation benefits mandated by Labor Code section 139.5, as amended in 1974.[1]

In September 1975, Thomas K. Slotten (hereafter applicant) sustained an industrial injury to his head, neck, and shoulders while employed as a police officer by the City of Santa Monica. Following settlement of his workers' compensation claim through a compromise and release agreement, applicant submitted a vocational rehabilitation plan to the Rehabilitation Bureau of the Division of Industrial Accidents. The bureau determined that public employees are entitled to the rehabilitation benefits provided by section 139.5, found that applicant was a qualified injured worker under the rules and regulations implementing the section,[2] approved the rehabilitation plan submitted by applicant, and ordered the city's workers' compensation carrier (State Compensation Insurance Fund, hereafter Fund) to provide the benefits called for by the plan.

---

[1] All statutory references hereafter are to the Labor Code unless otherwise specified.

[2] The rules and regulations are contained in title 8, article 12, of the California Administrative Code (§§ 10001-10015).

Section 10003, subdivision (c) of the California Administrative Code provides:

"(c) 'Qualified Injured Worker' means an employee:

"(1) The effects of whose injury, whether or not combined with the effects of a prior injury or disability, if any, permanently preclude, or are likely to preclude, the employee from engaging in either his usual and customary occupation or the position in which he was engaged at the time of injury; and

"(2) Who can be reasonably expected to benefit from a rehabilitation program."

The city and the Fund (hereafter petitioners) requested the bureau to reconsider its decision on the ground that there was no mandatory duty on the part of a public employer to provide vocational rehabilitation benefits to its injured employees. The request was treated as a petition for a hearing before a workers' compensation judge on the issue of rehabilitation[3] and such a hearing was held. The workers' compensation judge found that applicant was a qualified injured worker entitled as a matter of right to vocational rehabilitation benefits under section 139.5[4] and upheld the bureau's decision. Petitioners requested reconsideration and the matter was heard by the Workers' Compensation Appeals Board sitting en banc. The board, with two members dissenting, held that section 139.5 mandated vocational rehabilitation for public as well as private employees and affirmed the judge's decision.

Petitioners seek review and annulment of the board's decision on the ground that vocational rehabilitation programs for public employees are

---

[3]Section 10008 of title 8, article 12 of the California Administrative Code provides:

"When the parties are unable to agree upon a plan, both employer and employee shall fully utilize the conciliation and mediation services of the Bureau prior to initiating a proceeding before a referee of the Appeals Board.

"An employer or employee who objects to a final determination of the Bureau may initiate proceedings before a referee of the Appeals Board on all questions regarding rehabilitation.

"Where the Bureau is unable to achieve a rehabilitation plan through mediation and conciliation, it may initiate proceedings before a referee of the Appeals Board."

[4]Section 139.5 presently provides:

"(a) The Administrative Director shall establish within the Division of Industrial Accidents a rehabilitation unit, which shall include appropriate professional staff, and which shall have all of the following duties:

"(1) To foster, review, and approve rehabilitation plans developed by a qualified rehabilitation representative of the employer insurance carrier, state agency, or employee.

"(2) To adopt rules and regulations which would expedite and facilitate the identification, notification, and referral of industrially injured employees to rehabilitation services.

"(3) To coordinate and enforce the implementation of rehabilitation plans.

"(b) The salaries of the personnel of the rehabilitation unit shall be fixed by the State Personnel Board.

"(c) When a qualified injured workman chooses to enroll in a rehabilitation program, he shall continue to receive temporary disability indemnity payments, plus additional living expenses necessitated by the rehabilitation program, together with all reasonable and necessary vocational training, at the expense of the employer or the insurance carrier, as the case may be.

"(d) No provision of this section nor of any rule, regulation, or rehabilitation plan developed or promulgated under this section nor any benefit provided pursuant to this section shall apply to any injured employee whose injury occurred prior to January 1, 1975. Nothing in this section shall affect any plan, benefit, or program authorized by this section as added by Chapter 1513 of the Statutes of 1965 or as amended by Chapter 83 of the Statutes of 1972."

governed by division 4.7 of the Labor Code (§§ 6200-6208) which provides for voluntary participation by both employer and employee and that the benefits of section 139.5 extend only to employees in the private sector. We have concluded that the rehabilitation services mandated by section 139.5 must be provided to any qualified injured worker, whether in the public or private sector, and that the board's decision should be affirmed.

I

In order to place the issue presented by this proceeding in proper perspective, we begin our analysis with a brief review of the history of vocational rehabilitation programs for the industrially injured employee in California.

Prior to 1965, our workers' compensation laws made no provision for vocational rehabilitation. Injured workers in need of rehabilitation had to seek aid outside the workers' compensation system through state and federally funded programs. In 1965, on the recommendation of the California Workmen's Compensation Study Commission,[5] the Legisla-

---

[5]The Workmen's Compensation Study Commission was established by the Legislature in 1963. (Stats. 1963, ch. 2040, former Lab. Code, §§ 6200-6240.) The commission was directed to do the following:

"The commission shall conduct a study of, and make suggestions regarding, the workmen's compensation system as set forth in Division 4 (commencing with Section 3201) and Division 4.5 (commencing with Section 6100) of the Labor Code to determine whether the system most effective[ly] contributes to the original, fundamental purposes of the workmen's compensation laws, including relief from the consequences of injury; prompt, certain, and nonlitigious determination of rights under the law; and the rehabilitation and restoration of injured workers to gainful employment.

"This study may include, but need not be limited to, a study of constitutional and statutory provisions and administrative regulations, procedures, and practices; a critical analysis of the permanent disability rating system and its actual effect upon injured workmen; a study leading to the establishment of guidelines to secure greater certainty in the disposition of cases involving physiological disorders as well as cases involving psychic disorders; and consideration of a first-class rehabilitation system to obtain maximum medical relief from the consequences of industrial injury and to encourage return to gainful employment.

"The commission shall advise the Governor and the Legislature of its findings, conclusions, and suggestions, including recommendations in regard to proposed constitutional and statutory changes, improved administrative regulations, procedures, and practices, permanent disability rating schedules, and anything else in its opinion designed to further the accomplishment of the purposes of the workmen's compensation system in regard to restoring injured workmen to employment."

The commission made its report to the Legislature in April 1965.

ture made extensive revisions to the California workers' compensation system, including the addition of section 139.5,[6] providing for a voluntary rehabilitation program for "injured workmen"[7] and giving the Division of Industrial Accidents authority to establish a rehabilitation unit within its medical bureau. In the same act, the Legislature amended section 3207 to include "vocational rehabilitation" within the definition of "compensation."[8]

---

[6]Section 139.5, as enacted in 1965 (Stats. 1965, ch. 1513, pp. 3565-3566), provided:

"The administrative director may establish within the medical bureau of the Division of Industrial Accidents a rehabilitation unit, including an appropriate professional staff, to foster, review, and approve rehabilitation plans, and to expedite and facilitate the carrying out of rehabilitation plans. The salaries of the personnel of the rehabilitation unit shall be fixed by the State Personnel Board.

"The initiation of a rehabilitation plan shall be by the employer or insurance carrier. If the employer, the insurance carrier, or the injured workman disagree as to the establishment of a rehabilitation plan either may consult with the rehabilitation unit or may seek an advisory determination by the rehabilitation unit which may make an advisory determination that such services are necessary or advisable.

"Any plan initiated by an employer or insurance carrier shall be presumed to be necessary and meritorious.

"Injured workmen may agree with their employers or the insurance carriers for insured employers upon rehabilitation programs without submission of such programs for approval.

"Where an employer or insurance carrier fails or refuses to initiate a rehabilitation plan for an injured workman, or fails or refuses to participate in a plan previously initiated and agreed to by such employer or insurance carrier, such failure and refusal shall be deemed to be final.

"Where a rehabilitation plan has been found to be necessary and meritorious, and the injured workman thereafter refuses to undertake and participate in such plan found to be reasonable and meritorious, in absence of his acceptance thereof such refusal shall be deemed to be final.

"Upon undertaking a rehabilitation program the injured workman shall continue to receive temporary disability indemnity and in addition shall receive the sum of fifty-two dollars and fifty cents ($52.50) per week as an advance on permanent disability indemnity. Such advance is limited to 26 weeks, but this shall not limit the right of the employer or insurance carrier to continue the rehabilitation plan and advances for a longer period. Such advance shall be credited in full against the permanent disability indemnity determined to be due to such employee for his permanent disability rating when established, up to the extent of the permanent disability indemnity so found and determined. The determination of the employee's permanent disability percentage in such case shall be with reference to his age and occupation at the time that such determination is then made.

"The initiation of a rehabilitation program or the acceptance thereof shall be voluntary and not be compulsory on the employer, the insurance carrier or the injured workman."

[7]The Workmen's Compensation Study Commission had recommended that injured workers have a right to such medical and vocational rehabilitation services as may be reasonably necessary to restore the worker to suitable employment. (Workmen's Comp. Study Com. Rep. (Apr. 1965) pp. 222-223.) The Legislature, however, provided for a program which was voluntary on the part of the employee and employer.

[8]Section 3207 provides: "'Compensation' means compensation under Division 4 and includes every benefit or payment conferred by Division 4 upon an injured employee,

The voluntary program authorized by section 139.5 enjoyed little success. Since the statute contained no provisions for notifying employees of the availability of vocational rehabilitation services, many injured workers were ignorant of the opportunity for rehabilitation. Prior to 1975, the rehabilitation bureau consisted of only one rehabilitation officer and one part-time secretary.[9] Between 1966 and 1969, only 141 workers participated in voluntary rehabilitation plans approved by the bureau and 111 of these plans referred the worker to the Department of Rehabilitation so that the cost of rehabilitation was met by the state rather than the employer or insurer.[10] Under section 139.5, the employee's rehabilitation benefit was credited as an advance against his permanent disability indemnity so that he was in effect paying for his own support during rehabilitation from other benefits. As an incentive for employers to furnish vocational rehabilitation, section 139.5 provided that employees' permanent disability percentages were to be computed with reference to their ages and occupations after rehabilitation. (See *Moyer* v. *Workmen's Comp. Appeals Bd.,* 10 Cal.3d 222, 234-235 [110 Cal.Rptr. 144, 514 P.2d 1224].) However, this provision invariably resulted in lower permanent disability ratings for injured workers. (See *Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d 222, 234.)

In 1971, the Legislature enacted division 4.7 of the Labor Code (§§ 6200-6207)[11] establishing a notification and referral procedure for "full-time public employees who may be benefited by rehabilitation services and retrained for other positions in public service." (§ 6200.) The State Department of Rehabilitation, rather than the Rehabilitation Bureau of the Division of Industrial Accidents, was given the authority to cooperate in designing and monitoring plans. The statute provided for mandatory notice of availability of rehabilitation services to any employee disabled for over 28 days and for mandatory notice to the Department of Rehabilitation of the employee's disability. (§ 6201.) Employees' rehabilitation benefits were expressly made additional ben-

including vocational rehabilitation, or in the event of his death, upon his dependents, without regard to negligence."

[9]Final Report to the Governor and the California Legislature of the State Workers' Compensation Advisory Committee (July 1, 1975) page 19.

[10]During the same period, the Department of Rehabilitation rehabilitated over 3,000 industrial workers. (Note, *Workmen's Compensation and Vocational Rehabilitation in California* (1972) 9 San Diego L.Rev. 962, 975.)

[11]Section 6200 provides: "Every public agency, its insurance carrier, and the State Department of Rehabilitation shall jointly formulate procedures for the selection and orderly referral of injured full-time public employees who may be benefited by rehabilitation services and retrained for other positions in public service. The State

efits, not meant to "be converted to or replace" any other workers' compensation benefits. (§ 6207.)[12]

Although division 4.7 directed the formulation of a procedure for notifying injured employees of the availability of rehabilitation services, it was unclear whether delivery or rehabilitation services was intended to be compulsory or voluntary on the part of employers and their insurance carriers.[13] In 1972, the Legislature resolved this uncertainty by adding

Department of Rehabilitation shall cooperate in both designing and monitoring results of rehabilitation programs for the disabled employees. The primary purpose of this division is to encourage public agencies to reemploy their injured employees in suitable and gainful employment."

Section 6201 provides: "The employer or insurance carrier shall notify the injured employee of the availability of rehabilitation services in those cases where there is continuing disability of 28 days and beyond. Notification shall be made at the time the employee is paid retroactively for the first day of disability (in cases of 28 days of continuing disability or hospitalization) which has previously been uncompensated. A copy of said notification shall be forwarded to the State Department of Rehabilitation."

Section 6202 provides: "The initiation of a rehabilitation plan shall be the joint responsibility of the injured employee, and the employer or the insurance carrier."

Section 6203 provides: "If a rehabilitation plan requires an injured employee to attend an educational or medical facility away from his home, the injured employee shall be paid a reasonable and necessary subsistence allowance in addition to temporary disability indemnity. The subsistence allowance shall be regarded neither as indemnity nor as replacement for lost earnings, but rather as an amount reasonable and necessary to sustain the employee. The determination of need in a particular case shall be established as part of the rehabilitation plan."

Section 6204 provides: "An injured employee agreeing to a rehabilitation plan shall cooperate in carrying it out. On his unreasonable refusal to comply with the provisions of the rehabilitation plan, the injured employee's rights to further subsistence shall be suspended until compliance is obtained, except that the payment of temporary or permanent disability indemnity, which would be payable regardless of the rehabilitation plan, shall not be suspended."

Section 6205 provides: "The injured employee may agree with his employer or insurance carrier upon a rehabilitation plan without submission of such plan for approval to the State Department of Rehabilitation. Provision of service under such plans shall be at no cost to the State General Fund."

Section 6206 provides: "The injured employee shall receive such medical and vocational rehabilitative services as may be reasonably necessary to restore him to suitable employment."

Section 6207 provides: "The injured employee's rehabilitation benefit is an additional benefit and shall not be converted to or replace any workmen's compensation benefit available to him."

[12]In enacting division 4.7, the Legislature provided for an appropriation from the general fund for the purpose of the statute. (Stats. 1971, ch. 1506, § 2, p. 2977.) In approving the measure, Governor Reagan deleted the appropriation stating that the Department of Rehabilitation could absorb any additional costs for implementing the act with available state and federal funds. (Stats. 1971, ch. 1506, § 2, p. 2976.)

[13]Department of Rehabilitation, Health and Welfare Agency Legislative Report on Assembly Bill No. 1291 (Sept. 1, 1974) appendix DR-F, page 3; Joint Report of Department of Rehabilitation, Health and Welfare Agency and Department of Industrial

section 6208,[14] expressly making the initiation and acceptance of a rehabilitation plan under division 4.7 voluntary on the part of the employer, the carrier, and the employee.

In 1974, the Legislature passed two measures bearing upon the issue before us. Responding to the recommendation of the National Commission on State Workmen's Compensation Laws, the Legislature amended section 139.5 (eff. Jan. 1, 1975) to make vocational rehabilitation at the expense of employers or their carriers a matter of right for qualified injured workers. (Stats. 1974, ch. 1435, p. 3138.) The Director of the Division of Industrial Accidents was directed to establish a rehabilitation unit with duties to review and approve rehabilitation plans, to adopt rules and regulations, and to expedite identification, notification and referral of industrially injured workers to rehabilitation services.

At the same session, as part of the Berryhill Total Compensation Act, the Legislature added chapter 3.5 to division 5, title 2 of the Government Code (Gov. Code, §§ 18120-18129) providing for industrial disability leave for "state officers and employees who are members of the Public Employees' Retirement System."[15] (Stats. 1974, ch. 374, p. 734, urgency eff. June 30, 1974, operative July 1, 1974.) The law entitles a state employee who suffers temporary industrial disability to receive industrial disability leave benefits in lieu of workers' compensation disability payments, the benefits consisting of a percentage of the employee's full pay. (Gov. Code, § 18122.) "Industrial disability leave" means temporary disability as defined in divisions 4 and 4.5 of the Labor Code and "includes any period in which the disability is permanent and stationary and the disabled employee is undergoing vocational rehabilitation." (Gov. Code, § 18121.) The disability leave payments are made "contingent on the employee's agreement to cooperate and participate in a reasonable and appropriate vocational rehabilitation plan when furnished by the state. . . ." (Gov. Code, § 18127.) Government Code section 18124 provides: "Division 4.7 (commencing with Section 6200) of

Relations, Division of Industrial Accidents, Agriculture and Services Agency to Joint Legislative Budget Committee (Feb. 1, 1977) page 9.

[14]Section 6208 provides: "The initiation and acceptance of a rehabilitation program shall be voluntary and not compulsory upon the employer, the insurance carrier, or the injured employee."

[15]In 1975 the law was made applicable to state officers and employees who are members of the State Teachers' Retirement System (Stats. 1975, ch. 295, p. 737) and in 1978 it was further amended to include state officers and employees who are employees of the Legislature and not members of civil service. (Stats. 1978, ch. 776, § 36.5, No. 5 Deering's Adv. Legis. Service, pp. 1555-1556, No. 9 West's Cal. Legis. Service, p. 2634.)

the Labor Code shall not apply to employees to which this chapter applies."

The Attorney General rendered an opinion in 1975 that section 139.5, as amended in 1974, applies only to employees in the private sector. (58 Ops.Cal.Atty.Gen. 871.) The Rehabilitation Bureau of the Division of Industrial Accidents, however, has interpreted section 139.5 to provide rehabilitation benefits to all employees, public and private, and has, as in this case, ordered public employers and their carriers to provide such benefits. (Swezey, Cal. Workmen's Compensation Practice 1973 (Cont. Ed.Bar May 1978 supp.) appen. A, p. 188.) The Workers' Compensation Appeals Board has likewise decided in this case that section 139.5 covers both public and private employees. There has not, however, been any judicial pronouncements on the issue before us. Hence, this case is one of first impression.

## II

Our role in this case is to derive the Legislature's intent in framing the various statutes pertaining to vocational rehabilitation for employees so as to effectuate the purpose of the law. (*Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d 222, 230; *Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640, 645 [335 P.2d 672].) ■ "The guiding star of statutory construction is the intention of the Legislature. To the end that it be correctly ascertained the statute is to be read in the light of its historical background and evident objective." (*H. S. Mann Corp.* v. *Moody,* 144 Cal.App.2d 310, 320 [301 P.2d 28]; *Stafford* v. *Realty Bond Service Corp.,* 39 Cal.2d 797, 805 [249 P.2d 241].) ■ Every statute should be construed in the context of the whole system of law of which it is a part so that all may be harmonized and given effect. (*Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d 640, 645.) ■ Moreover, it must be presumed that the Legislature intended to enact a valid statute; consequently, we must adopt an interpretation, consistent with the statutory language and purpose, that eliminates doubts as to the constitutionality of the statute. (*Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d 222, 229; *In re Kay,* 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142].) ■ Finally, contemporaneous interpretation of a statute by an administrative agency charged with its interpretation and administration, though not controlling, is entitled to great weight unless it is clearly erroneous. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.,* 22 Cal.3d 658, 668-669 [150 Cal.Rptr. 250, 586 P.2d 564]; *Wilkinson* v. *Workers' Comp. Appeals Bd.,* 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564

P.2d 848]; *Nipper* v. *California Auto Assigned Risk Plan,* 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743]; *People* v. *Navarro,* 7 Cal.3d 248, 274 [102 Cal.Rptr. 137, 497 P.2d 481]; *Rivera* v. *City of Fresno,* 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793]; *Mooney* v. *Pickett,* 4 Cal.3d 669, 681 [94 Cal.Rptr. 279, 483 P.2d 1231]; *Carter* v. *Com. on Qualifications, etc.,* 14 Cal.2d 179, 185 [93 P.2d 140]; *People* v. *Berry,* 147 Cal.App.2d 33, 37 [304 P.2d 818].) However, the final say on the meaning of a statute rests with the courts. (*Hall* v. *City of Taft,* 47 Cal.2d 177, 188 [302 P.2d 574]; *Bodinson Mfg. Co.* v. *California E. Com.,* 17 Cal.2d 321, 326 [109 P.2d 935].)

The ultimate question in this case is whether section 139.5 extends mandatory vocational rehabilitation benefits to both private and public employees, or only to those employed in the private sector. We begin with an analysis of the intended scope of section 139.5 as originally enacted; next we consider the purpose and effect of the enactment of division 4.7; and finally we consider the effect of the 1974 legislation pertaining to rehabilitation of injured workers.

1. *Interpretation of section 139.5 as originally enacted:*

Insofar as the coverage of section 139.5 is concerned—that is, whether it applies to public as well as private employees—the current section retains the same language as the original version; it uses the terms "employee," "injured workman," and "employer" without modifiers telling us whether the section refers only to the private sector or to both public and private employment. In resolving this ambiguity, the section must be construed in light of history and in the context of the entire system of workers' compensation of which it is an integral part. Consideration must also be given to any contemporaneous construction by administrative agencies charged with its enforcement.

For the purpose of division 4 relating to the workers' compensation and insurance program, the word "employer" has been defined to include all public entities. (§ 3300.)[16] Although section 139.5 appears in division 1 pertaining to the organization of the Department of Industrial Accidents, it was manifestly intended to be a part of the entire system of California's

---

[16]Section 3300 provides:

"As used in this division, 'employer' means:

"(a) The State and every State agency.

"(b) Each county, city, district, and all public and quasi public corporations and public agencies therein.

"(c) Every person including any public service corporation, which has any natural person in service.

"(d) The legal representative of any deceased employer."

workers' compensation laws. At the same time that it added section 139.5, the Legislature amended section 3207 by including "vocational rehabilitation" in the definition of "compensation." (Stats. 1965, ch. 1513, p. 3567.) Moreover, the foregoing legislation was enacted in response to the recommendations of the Workmen's Compensation Study Commission which had been established by the Legislature with directions to undertake studies regarding the workmen's compensation system "as set forth in Division 4 (commencing with Section 3201) and Division 4.5 (commencing with Section 6100) of the Labor Code." The commission's assignment was to determine whether the system presently fulfilled the purposes of the workers' compensation laws, the studies to include consideration of the rehabilitation system, and to make recommendations "to further the accomplishment of the purposes of the Workmen's Compensation system in regard to restoring injured workmen to employment." (Former § 6217, Stats. 1963, ch. 2040, p. 4270.) The California Constitution invests the Legislature with plenary power to establish "a complete system of workers' compensation" including "full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury." (Cal. Const., art. XIV, § 4.) Vocational rehabilitation is clearly a remedial treatment to alleviate the effects of industrial injury and must be deemed an integral part of any complete workers' compensation system.

Thus, although section 139.5 appears in division 1 of the code, there is no doubt that it was intended to be part of the workers' compensation laws found in divisions 4 and 5. In its recent decision in *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d 658, the Supreme Court had before it a question involving the interpretation of section 132a prohibiting discrimination against workers injured in the course of employment. Although section 132a appears in division 1, the high court held that section 3202 enjoining liberal construction of the provisions of "Division 4 and Division 5" of the code " 'with the purpose of extending their benefits for the protection of persons injured in the course of their employment' " required liberal construction of all aspects of our workers' compensation laws, including section 132a.[17] (*Id.,* at p. 668.) For like

[17]In *Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d 222, which dealt with construction of the word "voluntary" in original section 139.5, the Supreme Court held that while it was "not impelled by legislative mandate" to liberally construe the section, liberal construction made good sense in the context of workers' compensation laws and promoted the constitutionally declared objectives of former article XX, section 21 of the California Constitution (now art. XIV, § 4). (*Id.,* at pp. 235-236.) In footnote 6 at page 230 of the *Moyer* opinion, the court states: "Since section 139.5 is contained in division 1

reason, the broad definition of the term "employer" found in section 3300 must be deemed to have been intended to extend to section 139.5 when it was enacted in 1965. It would be sheer automatism to say that the fortuitous placement of section 139.5 in division 1 rather than in division 4 of the code precludes application of section 3300.

Another important factor in the history of section 139.5 supports the broad interpretation of the terms "employer" and "employee." From its enactment in 1965 until 1971, section 139.5 was apparently construed by both the Division of Industrial Accidents and the Department of Rehabilitation to apply to public as well as private employment. (Joint Rep. of Dept. of Rehabilitation, Health & Welf. Agency and Dept. of Industrial Relations, Div. of Industrial Accidents, Agr. & Services Agency to Joint Legis. Budget Com. (Feb. 1, 1977) Rehabilitation Services Provided to Industrially Injured Workers, p. 9.) This interpretation by the agencies charged by the Legislature with the administration of the law is entitled to great weight in ascertaining the intended scope of the section.

■ Petitioner seeks to invoke the rule that general language in a statute such as "person" or "employer" should not be construed to apply to governmental entities in the absence of explicit legislative direction where such construction would infringe upon sovereign governmental powers. Where there would be no such infringement on sovereign power, however, the reason underlying that rule ceases to exist and it may properly be held that the Legislature intended the statute to apply to governmental entities even though it used only general language. (*City of Los Angeles* v. *City of San Fernando,* 14 Cal.3d 199, 277 [123 Cal.Rptr. 1, 537 P.2d 1250]; *Flournoy* v. *State of California,* 57 Cal.2d 497, 498 [20 Cal.Rptr. 627, 370 P.2d 331]; *Hoyt* v. *Board of Civil Service Commrs.,* 21 Cal.2d 399, 402 [132 P.2d 804].) *Nutter* v. *City of Santa Monica,* 74 Cal.App.2d 292 [168 P.2d 741], cited by petitioner, presented a far different case from the one before us. There, plaintiffs sought to have the provisions of Labor Code section 923 pertaining to the right of workers to enjoy freedom of contract in labor negotiations apply to bargaining in the public sector. The court held that public employment at that time was based upon public law and not on the contract right of collective

of the Labor Code, section 3202 manifestly does not apply to it." *Judson,* without mentioning *Moyer,* at least by implication rejects the mechanized approach taken in footnote 6 of *Moyer.*

bargaining. However, the California constitutional provision authorizing the establishment of a workers' compensation system states that the matters therein set forth are "expressly declared to be the social public policy of this State, binding upon all departments of the State government." (Cal. Const., art. XIV, § 4.) Accordingly, our workers' compensation laws have always defined the term "employer" to include all governmental agencies. (Stats. 1917, ch. 586, p. 835.) Moreover, by expressly including "vocational rehabilitation" benefits in the definition of "compensation" (§ 3207), the Legislature has indicated that all employees, public and private, shall enjoy the same rehabilitation benefits. Consequently, interpreting the word "employer" in section 139.5 to include the government involves neither an invasion of sovereignty nor an interference with the performance of governmental functions.

For all of the foregoing reasons, we find no difficulty in determining that section 139.5 as enacted in 1965 was intended to apply to public as well as private employees. The crucial question, then, is whether the enactment of division 4.7 (§§ 6200-6208) impliedly repealed section 139.5 to the extent that it applied to public employees. We turn to that issue.

2. *Enactment of division 4.7:*

The Legislature declared that "the primary purpose" of division 4.7 is "to encourage public agencies to *reemploy* their injured employees in suitable and gainful employment" (italics added) and directed every public agency, its insurance carrier and the Department of Rehabilitation to set up procedures for the notification and referral "of injured full-time public employees who may be benefited by rehabilitation services and retrained for other *positions in public service.*" (Italics added; § 6200.) Thus, division 4 was intended to establish a notification procedure for that limited class of public employees who work "full-time" and who may be rehabilitated and retrained "for other positions in public service."

As we noted earlier, although division 4.7 established a mandatory notification and referral procedure, there was a question whether it also contemplated mandatory delivery of rehabilitation services. The legislative history indicated that furnishing of rehabilitation services by the employers and their carriers was intended to be voluntary. In order to clarify the matter, in 1972 the Legislature added section 6208 specifically providing that "[t]he initiation and acceptance of a rehabilitation

program shall be voluntary and not compulsory upon the employer, the insurance carrier, or the injured employee."

Both the Attorney General and petitioner have attempted to explain the significance of division 4.7. The crux of the Attorney General's opinion is that even if "employer" as used in section 139.5 could be interpreted to include public employers, division 4.7 constituted a partial repeal by implication of section 139.5 insofar as it applies to public employment. (58 Ops.Cal.Atty.Gen. 871, 874-875.) The Attorney General and petitioner also suggest that the passage of section 6208 indicated that the Legislature intended all rehabilitation programs affecting public employees to be voluntary. Neither argument is persuasive.

■ The Attorney General invokes the principle of statutory interpretation that where a special act conflicts with a general statute, the special act will be considered as an exception to the general statute whether it was passed before or after the general statute. (*Agricultural Labor Relations Bd.* v. *Superior Court,* 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687]; *Lacy* v. *Richmond Unified Sch. Dist.,* 13 Cal.3d 469, 472 [119 Cal.Rptr. 1, 530 P.2d 1377]; *In re Williamson,* 43 Cal.2d 651, 654 [276 P.2d 593].) A special act will work a repeal by implication, however, only where it is in direct conflict with the general statute, in which event the special legislation effects a limited repeal of the general statute only to the extent that the two are irreconcilable. (*Governing Board* v. *Mann,* 18 Cal.3d 819, 828 [135 Cal.Rptr. 526, 558 P.2d 1].) Repeals by implication are disfavored and there is a presumption against the operation of that doctrine. (*In re Thierry S.,* 19 Cal.3d 727, 744 [139 Cal.Rptr. 708, 566 P.2d 610].) ■ "They [repeals by implication] are recognized only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are 'irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' [Citations.]" (*In re White,* 1 Cal.3d 207, 212 [81 Cal.Rptr. 780, 460 P.2d 980]; *In re Thierry S., supra,* 19 Cal.3d 727, 744.)

As we have demonstrated, section 139.5 as enacted in 1965 was intended to apply to all employers, public and private. Division 4.7 merely established a mandatory notification and referral procedure for injured full-time public employees who might be rehabilitated and retrained for reemployment in public service. Lack of such notification was one of the major failures of the rehabilitation program established

under section 139.5 as originally enacted. Consequently, division 4.7 only supplemented section 139.5 as to injured full-time public employees who might be restored to public service. As such, division 4.7 was not in irreconcilable conflict with the continued inclusive coverage of all employees under section 139.5. The two laws could be harmonized without construing 139.5 as applying exclusively to private employers.

That division 4.7 was not intended to supersede section 139.5 insofar as public employees are concerned is further supported by the provisions of sections 3207 and 6207. As noted earlier, section 3207 was amended simultaneously with the enactment of section 139.5 to include rehabilitation within the definition of compensation. Section 6207 provides that the rehabilitation benefit under division 4.7 "is an additional benefit and shall not be converted to or replace any workmen's compensation benefit available to [the injured worker]." As the Workers' Compensation Appeals Board's majority opinion points out, if section 139.5 is interpreted to apply only to private employees, "industrially injured public employees will be deprived of the right of rehabilitation possessed by all other injured workers under the workers' compensation system contrary to the express provisions of Labor Code Section 6207."

Nor was the enactment of section 6208 intended to make division 4.7 the exclusive rehabilitation program for all public employees. As we have explained, the legislative history reveals that the section was added to clarify the original intent of the Legislature that rehabilitation services under division 4.7 were to be voluntary. The hearing notice for the Senate Committee of Industrial Relations describes the bill (Sen. Bill No. 1069) as clarifying legislation "making no substantive changes."

For all of the foregoing reasons, we conclude that neither the enactment of division 4.7 nor the addition of section 6208 effected an implied partial repeal of the coverage theretofore extended to public employees under section 139.5.

3. *The 1974 legislation:*

As noted in our earlier review of the pertinent legislation, in 1974 the Legislature amended section 139.5 to make vocational rehabilitation a matter of right for qualified injured workers and made it mandatory for the Director of the Division of Industrial Accidents to establish a rehabilitation bureau to review and approve rehabilitation plans and to adopt rules and regulations to facilitate the identification and referral of

injured workers to rehabilitation services. We also noted that in the same session, as part of the Berryhill Total Compensation Act, the Legislature added chapter 3.5 to division 5, title 2 of the Government Code (Gov. Code, §§ 18120-18129) providing for industrial disability leave in lieu of workers' compensation benefits to state officers and employees who were members of the Public Employees' Retirement System. The law has since been amended to include officers and employees who are members of the State Teachers' Retirement System and officers and employees of the Legislature who are not members of the civil service. (See fn. 15, *ante.*) The statute provides that division 4.7 of the Labor Code shall not apply to those employees who are subject to the industrial disability leave law.[18]

We find nothing in the 1974 amendments to section 139.5 indicating that public employees are to be excluded from the benefits therein provided. Inasmuch as section 139.5 from its inception has always applied to all employees, public as well as private, the mandatory benefits provided by the 1974 amendment perforce extended to all qualified employees, public as well as private. Rehabilitation benefits, now a matter of right under the 1974 amendment to section 139.5, are benefits included within the definition of compensation under the workers' compensation law. (§ 3207.) Since the workers' compensation law extends to all employees, public and private, in the absence of any provision in section 139.5 indicating that the benefits thereunder are to be withheld from public employees, the section must be construed as extending its benefits to public as well as private employees.

The foregoing interpretation of section 139.5 is in harmony with division 4.7. As a result of the 1974 addition of chapter 3.5 to division 5, title 2 of the Government Code, and subsequent amendments thereto, division 4.7 now touches only a limited group of public employees and, as to those affected, it merely provides an identification and referral

[18]The Attorney General explains that the purpose of Government Code section 18124 declaring that employees subject to chapter 3.5, division 5, title II of the Government Code are not subject to division 4.7 of the Labor Code was to avoid a conflict between the voluntary participation of an employee in a rehabilitation plan under division 4.7 and the mandatory requirement that the employee participate in a rehabilitation plan provided under chapter 3.5 as a condition precedent to the right to receive benefits under that chapter. (58 Ops.Cal.Atty.Gen. 871, 875, fn. 6.) The Attorney General appears to be ambivalent on whether the state is under a duty to provide a rehabilitation program under chapter 3.5. (*Id.,* at p. 874, fn. 4.)

In this case, we are not called upon to decide whether public employees entitled to the benefits of chapter 3.5 would be entitled to rehabilitation services under section 139.5 should they elect to waive the provisions of chapter 3.5 and take workers' compensation benefits. (Gov. Code, § 18123.)

procedure for those full-time public employees who may be rehabilitated and retrained for reemployment in public service. The goals of section 139.5, as amended, are much broader. The mandatory rehabilitation services required to be provided mean services reasonably necessary to restore the employee to "suitable, gainful employment" which is defined as "that employment or *self-employment* which is reasonably attainable and which offers an opportunity to restore the employee as soon· as practicable and near as possible to maximum self support, . . ." (Cal. Admin. Code, tit. 8, § 10003, subd. (f); italics added.) The all-inclusive interpretation of section 139.5 does not render it in irreconcilable conflict with the limited voluntary program envisioned by division 4.7.

As we noted above, the administrative agencies charged with the responsibility of administering the rehabilitation laws have interpreted section 139.5, as amended in 1974, to apply to public and ·private employees.[19] The Bureau of Rehabilitation of the Division of Industrial Accidents has, as in the instant case, so interpreted section 139.5. (Swezey,

---

[19]A commentator on workers' compensation laws has come to the same conclusion concerning the scope of section 139.5. In his handbook on California Worker's Compensation Law, Mr. Herlick states: "It is this author's view that the 1975 amendment to Sec. 139.5 applies to all employees covered by the workers' compensation law, including public employees. The special law places a duty upon public employers to prepare plans to rehabilitate their workers for public service, but specific plans are voluntary on the part of public employers and their employees. (Labor Code Sec. 6208) Laws are to be construed to give effect to each harmoniously rather than to defeat the legislature's purpose, and there is nothing in Sec. 139.5 or Secs. 6200 et seq. to indicate that the legislature meant to place public employees in a less favorable situation than employees in the private sector. Appropriately, Sec. 6207 provides that the voluntary program is an additional benefit and is not to replace any workers' compensation benefit available to the public employees. Effect can be given both laws without conflict in the operation of either. This conclusion would seem reinforced by the provisions of Labor Code Sec. 3207 which recognizes vocational rehabilitation as a workers' compensation benefit. Labor Code Sec. 3202 requires that the compensation law be liberally construed to benefit injured workers and their families." (1 Herlick, Cal. Worker's Compensation Law Handbook (2d ed. 1978) § 6.20, pp. 176-177.)

We also note that in its July 1975 report to the Governor and Legislature, the State Workers Compensation Advisory Committee reported that under section 139.5, as amended in 1974, rehabilitation "was made a *right* or *benefit* and considered a part of the injured employee's right to compensation in those cases where it could be shown that the employee would benefit from a vocational rehabilitation program." (Final Rep. to the Governor and the Cal. Leg. of the State Workers' Comp. Advisory Com. (July 1, 1975) p. 19.) We find nothing in the report suggesting that the right to rehabilitation benefits conferred by section 139.5 was to be considered a part of the injured employee's right to compensation only if he is employed in the private sector. We also note that the same committee reported that California is in compliance with the National Commission Recommendations on rehabilitation of injured workers, including the recommendation that "[e]very employer . . . should be required to cooperate with the medical-rehabilitation division in every instance when an employee may need rehabilitation

Cal. Workmen's Compensation Practice 1973 (Cont.Ed.Bar May 1978 supp.) appen. A, p. 188.) The Workers' Compensation Appeals Board, in an en banc decision in this case, has also interpreted the section to extend to public employees. "[W]hen an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts 'and will be followed if not clearly erroneous.' " (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d 658, 668, quoting *Bodinson Mfg. Co.* v. *California E. Com., supra,* 17 Cal.2d 321, 325-326.) We agree with the board's interpretation of section 139.5 as extending rehabilitation benefits as a matter of right to all employees, public and private.[20]

An additional reason why section 139.5 should be construed to extend to public as well as private employees is that in construing a statute, courts should adopt an interpretation consistent with the statutory language and purpose that eliminates doubts as to its constitutionality. (*Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d 222, 229; *In re Kay, supra,* 1 Cal.3d 930, 942.) To construe the 1974 amendment to section 139.5 as making rehabilitation benefits mandatory only to private employees would raise a serious equal protection issue. As the board observes, this would create two classes of injured workers, "those entitled to mandatory rehabilitation and those who are not." In light of the declared social policy and objectives contained in article XIV, section 4 of the California Constitution, we have difficulty in perceiving a rational basis for denying public employees the basic rehabilitation benefits required for private employees.

Petitioner points out that since the 1974 amendment to section 139.5, two bills clarifying that section 6208 does not preclude application of section 139.5 to public employees have been introduced. Failure of these bills to pass, it is urged, is evidence that section 6208 was intended to render all vocational rehabilitation for public employees strictly voluntary. However, failure of passage is as likely to indicate that the Legislature thought application of section 139.5 to public employees was

---

services" and that "[e]mployer should pay all costs of vocational rehabilitation authorized by the workmen's compensation agency and necessary to return a worker to suitable employment." (Final Rep. to the Governor and the Cal. Leg. of the State Workers' Comp. Advisory Com. (July 1, 1975) pp. 88-89.)

[20]While we agree generally with the board's analysis, we do not believe it necessary to our decision to hold that the 1974 amendment to section 139.5 repealed section 6208 by implication. We find no inconsistency in the continuation of the limited voluntary program under division 4.7 in conjunction with the inclusive mandatory program of section 139.5.

manifest. We agree with the view that " '[a]s evidences of legislative intent [unpassed bills] have little value.' " (*Miles* v. *Workers' Comp. Appeals Bd.,* 67 Cal.App.3d 243, 248, fn. 4 [136 Cal.Rptr. 508], quoting *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.,* 263 Cal.App.2d 41, 58 [69 Cal.Rptr. 480]; see *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, 264-265 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Burgess* v. *Board of Education,* 41 Cal.App.3d 571, 580-581 [116 Cal.Rptr. 183].)

Petitioner also points out that in enacting section 139.5, as amended, the Legislature made no appropriation of funds to cover the increased costs of providing mandatory vocational rehabilitation for public employees. It argues that this omission indicates that the Legislature intended that public employee access to rehabilitation remain on the pre-1974 voluntary basis. Respondents counter that subsequent to the passage of the 1974 amendment to section 139.5, insurance rates were raised to absorb increased rehabilitation costs and that public agencies covered by insurance programs were subjected to the same premium increases as private employers.[21] We also take note of the fact, of which the Legislature must have been aware, that to deny injured public workers vocational rehabilitation benefits through the workers' compensation system will ultimately create a larger drain on public resources as these workers apply for disability benefits, vocational rehabilitation programs provided by the State Department of Rehabilitation, or welfare.

### Conclusion

We share the opinion expressed by the board that "the Legislature intended that *all* injured workers in the State of California are entitled to the opportunity to again become productive members of society, to become whole men and women, and socially participating human beings, whose health and welfare are clearly related to the needs of our society."

The board's decision is affirmed.

Gardner, P. J., and Morris, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied March 14, 1979.

[21]The legislative history of the 1974 amendment to section 139.5 gives no clue as to the Legislature's reasons for failing to provide additional monies. We do note that appropriations established by that body on passage of division 4.7 (§§ 6200-6207) were disallowed by the Governor on the ground that the Department of Rehabilitation had sufficient funds available to absorb any increase in costs.