[No. A101128. First Dist., Div. Five. July 25, 2003.]

MEDICAL BOARD OF CALIFORNIA, Petitioner, v.
SUPERIOR COURT FOR THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
LEE ROY LISKEY, Real Party in Interest.

168

---

**COUNSEL**
Bill Lockyer, Attorney General, Carlos Ramirez, Assistant Attorney General, Vivian H. Hara, Alfredo Terrazas and Thomas P. Reilly, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Mortimer H. Herzstein and N. Lee Ormasa for Real Party in Interest.

## OPINION

**GEMELLO, J.**—Does Business and Professions Code section 2354 permit disciplinary action against a physician's license to practice medicine based solely on the physician's failure to complete successfully a substance abuse diversion program? We conclude it does not.

■ When a physician "flunks out" of a diversion program, the Medical Board of California (Board) is authorized by statute to file an accusation charging any acts committed before, during, or after the physician's agreed-upon participation in the diversion program. It must then prove impairment or unprofessional conduct by clear and convincing evidence. Where the circumstances of the physician's termination from the diversion program do not otherwise evidence unprofessional conduct or impairment by this standard, we hold that the Board does not have authority to revoke or suspend a license based on the failure to complete the diversion program.

We affirm the trial court judgment vacating the administrative decision imposing discipline on Lee Roy Liskey's medical license for failure to complete diversion under circumstances not otherwise sufficient to establish unprofessional conduct.

### FACTUAL AND PROCEDURAL BACKGROUND

The Board began an investigation of real party Dr. Lee Roy Liskey (Liskey) in 1996, after receiving an anonymous complaint from a patient. Liskey agreed to an evaluation as provided in Business and Professions Code section 820.[1] The evaluating psychiatrist concluded Liskey was impaired and recommended he enter the Board's diversion program for alcohol and substance abuse. Liskey signed an agreement to enter the diversion program on January 14, 1997. The pending investigation was closed. In an initial phase of the program, Liskey underwent a four-day assessment. He was diagnosed as suffering from substance abuse but was determined to be "safe to return to work." The assessment report recommended that he participate in outpatient treatment focusing on prevention and education, and that he be monitored for two years with random drug screens and scheduled therapy. Liskey successfully completed a six-month outpatient treatment program from June through October 1997.

During continued monitoring in June and October of 1998, Liskey tested positive for cocaine use on two occasions. Liskey consistently and adamantly denied cocaine use and argued that the results were false positives. On both

---

[1] All further references are to the Business and Professions Code unless otherwise indicated.

occasions, Liskey had himself retested by different laboratories, and both times the results were negative for cocaine. Nevertheless, the Board's diversion committee insisted that Liskey undergo a 28-day course of inpatient treatment because of the two positive test results. When Liskey refused to enter the treatment, program administrators terminated him from the diversion program "for reasons other than successful completion" of the program.

The Board thereupon reopened its investigation of Liskey. Initially, Liskey agreed to reenter the diversion program and signed a second agreement. However, he withdrew his agreement and requested that he be reevaluated. James Reich, M.D., one of the evaluators, recommended that Liskey participate in a strict chemical dependency program and that the Board monitor his practice.

On the basis of the Reich report, the Board filed an accusation on February 9, 2000, seeking the revocation or suspension of Liskey's physician and surgeon's certification. The accusation charged as grounds for discipline that: (1) Liskey's ability to practice competently was impaired due to mental and/or physical illness pursuant to section 822;[2] and (2) he had failed to complete successfully the diversion program in which he had agreed to participate pursuant to section 2354.

An administrative law judge heard the matter and concluded that the Board failed to prove by clear and convincing evidence that Liskey's ability to practice medicine competently was impaired due to mental or physical illness, either because of alcohol or drug abuse or for any other reason; therefore, he found that Liskey was *not* subject to discipline under section 822. Further, the administrative law judge concluded that Liskey was not subject to discipline under section 2354 because failure to complete the diversion program was not by itself a sufficient basis for discipline.

The Board declined to adopt the decision and remanded the matter with directions to the administrative law judge to take further evidence relating to the legislative history of section 2354. (Gov. Code, § 11517, subd. (c)(2)(D).)

---

[2] Section 822 provides: "If a licensing agency determines that its licentiate's ability to practice his or her profession safely is impaired because the licentiate is mentally ill, or physically ill affecting competency, the licensing agency may take action by any one of the following methods: [¶] (a) Revoking the licentiate's certificate or license. [¶] (b) Suspending the licentiate's right to practice. [¶] (c) Placing the licentiate on probation. [¶] (d) Taking such other action in relation to the licentiate as the licensing agency in its discretion deems proper. [¶] The licensing agency shall not reinstate a revoked or suspended certificate or license until it has received competent evidence of the absence or control of the condition which caused its action and until it is satisfied that with due regard for the public health and safety the person's right to practice his or her profession may be safely reinstated."

The administrative law judge again determined that the evidence was insufficient to conclude Liskey was subject to discipline under section 822. However, in light of the legislative history materials, he reversed his interpretation of section 2354 and concluded that section 2354 *did* provide an independent basis for discipline for failure to complete diversion successfully. Nevertheless, he concluded that "no public need or interest would be served by actually disciplining [Liskey's] license" for violation of section 2354.

Again, the Board declined to adopt the administrative law judge's decision. In its Decision After Nonadoption, the Board interpreted section 2354 to require revocation of Liskey's license for his failure to complete diversion, notwithstanding the fact that the Board adopted the administrative law judge's finding that there was no cause for discipline under section 822.

Based on its interpretation of section 2354, on March 4, 2002, the Board revoked Liskey's license and stayed revocation pending his satisfactory completion of two years' probation, conditioned on his abstaining from the use of drugs and alcohol, submitting to random drug testing, participating in the diversion program, and having his practice monitored by an approved physician.

Liskey filed a petition for administrative mandate in the trial court, seeking review of the Board's decision. (See § 2337 [authorizing superior court review of any decision revoking, suspending or restricting a medical license].) The trial court granted Liskey's petition, finding that there was no cause for disciplinary action under section 822 and that the Board "lacked any authority to impose discipline against [Liskey] for the mere failure to complete the medical board's own diversion program." The court directed the Board to set aside its decision. Judgment was entered November 14, 2002.

The Board then filed a petition for writ of mandate and request for stay in this court. (§ 2337 [authorizing review of superior court decision by petition for extraordinary writ]; *Leone v. Medical Board* (2000) 22 Cal.4th 660, 663, 664, 670 [94 Cal.Rptr.2d 61, 995 P.2d 191].) This court issued a temporary stay and an order to show cause directing the parties to appear in court to show cause why the relief requested in the petition should not be granted.

## DISCUSSION

### I. *Standard of Review*

We are called upon to construe section 2354. ■ The interpretation of section 2354 is a question of law, which this court examines independently. We are not bound by the trial court's construction.

(*People ex. rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 768 [117 Cal.Rptr.2d 445].)

■ Our primary objective in interpreting a statute is to determine and give effect to the underlying legislative intent. (Code Civ. Proc., § 1859.) Intent is determined foremost by the plain meaning of the statute's language. If the language is clear and unambiguous, there is no need for judicial construction. When the language is reasonably susceptible of more than one meaning, it is proper to examine a variety of extrinsic aids in an effort to discern the intended meaning. (See *Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775–776 [72 Cal.Rptr.2d 624, 952 P.2d 641]; *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 53 [152 Cal.Rptr. 153].)

II. *Interpretation of Section 2354*

At the time the accusation was filed against Liskey, section 2354 provided: "Each physician and surgeon who requests participation in a diversion program shall agree to cooperate with the treatment program designed by a committee. Any failure to complete successfully a treatment program or an acceptable substitute program may result in the filing of an accusation for discipline which may include any acts giving rise to the original diversion." (Stats. 1990, ch. 1597, § 29, p. 7697.)

The Board construes section 2354, in particular the second sentence, as authorizing the Board to discipline a physician who, after voluntarily agreeing to participate in a diversion program in lieu of administrative disciplinary proceedings, is dismissed for failing to complete successfully the diversion program. The Board urges that the legislative history of section 2354 together with the history of a predecessor bill, Senate Bill No. 1434, overwhelmingly support its interpretation.

Liskey contends that the statute does not allow for physician discipline for the mere failure to complete a diversion program. Liskey construes the statute as authorizing the Board to file an accusation which may include the acts that gave rise to the original diversion, but not as authorizing termination from the program as an independent ground for discipline. He maintains that the statute is clear and unambiguous.

■ Though we disagree with Liskey's contention that section 2354's interpretation is apparent from the face of the statute, we agree with his ultimate conclusion: section 2354 does not create an independent basis for discipline and does not authorize the Board to impose discipline based solely

on a physician's failure to complete a diversion program. We reach this conclusion after careful consideration of the due process concerns this case presents, the statutory scheme surrounding section 2354, the apparent purposes underlying the statute, the presence (or absence) of instructive legislative history, and the Board's own regulations. (See *Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th 763, 775–776; *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 88 Cal.App.3d 43, 53 [152 Cal.Rptr. 153].)

### A. *Due Process*

■ Whenever possible, a legislative enactment must be construed in such a way as to preserve its constitutionality. (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129 [96 Cal.Rptr.2d 485, 999 P.2d 718].) "[T]he presumption is that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers." (*Shealor v. City of Lodi* (1944) 23 Cal.2d 647, 653 [145 P.2d 574].) We must construe section 2354 if at all possible in a manner that avoids any potential due process problems.

Liskey argues that neither section 2354 nor the agreements of understanding he signed before entering the diversion program provided him with sufficient notice that he could be disciplined solely for failure to complete the diversion program successfully. In his view, which the trial court adopted in its statement of decision, the Board's disciplinary action against his license is penal in nature. By analogy to the void-for-vagueness doctrine applied to criminal statutes, Liskey contends that section 2354 should not be construed to permit discipline solely for failure to complete diversion successfully, because the statute does not state with sufficient definiteness that such a failure constitutes unprofessional conduct and a basis for imposing discipline. (Cf. *Kolender v. Lawson* (1983) 461 U.S. 352, 357 [75 L.Ed.2d 903, 103 S.Ct. 1855]; *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1106 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)

■ The Board argues, correctly, that its disciplinary proceedings are intended to protect the public and are not penal in nature. (*Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th at pp. 785–786; *Bryce v. Board of Medical Quality Assurance* (1986) 184 Cal.App.3d 1471, 1476 [229 Cal.Rptr. 483].) ■ Due process considerations do not require that statutes and administrative proceedings for imposing discipline on a professional license be measured by standards developed in criminal law. (See *Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 367, fn. 12 [185 Cal.Rptr. 453, 650 P.2d 328].) When an administrative regulation such as section 2354 is challenged for vagueness, "the standard of constitutional vagueness is less strict than when a criminal law is attacked." (*Ford Dealers* at p. 366.)

■ The fact remains, however, that section 2354 does not state clearly that failure to complete diversion successfully is, by itself, unprofessional conduct for which discipline may be imposed. Furthermore, the Board's printed forms of agreement signed by Liskey also fail to give the physician notice that if he fails to complete the program, that failure is an independent ground for discipline. In the Statements of Understanding, Liskey agreed only that "if ... terminated by[] the Diversion Program for failure to comply with the Diversion Program requirements .... I may be prosecuted administratively for *violations identified above.*" (Italics added.) The first paragraph of these agreements sets out four specific violations, and the applicant for diversion is instructed to admit, for the limited purpose of acceptance into diversion, one or more of them by circling those applicable in his or her case. For example, in the agreements signed by Liskey, the violation circled is "[s]elf-administration of alcohol or drugs per B & P Code section 2239." By his signature on the agreement, the physician acknowledges that the Board retains the authority to investigate or continue to investigate any unprofessional conduct committed before, during, or after participation in the diversion program. (See § 2350, subd. (c).) These agreements not only fail to notify the physician that failure to complete diversion successfully is an independent ground for discipline, they suggest that the *only* consequences of failure to complete diversion successfully are those identified in the agreement.

■ A vagueness standard less strict than that applied to criminal statutes is not the same as no standard at all. A statute authorizing the Board to impose discipline against a medical license must include *some* reasonably clear identification of the basis for imposing that discipline.

■ In addition, to justify the imposition of discipline, there must be some nexus between an act or omission and the professional's fitness or competence to practice. (*Bryce v. Board of Medical Quality Assurance, supra,* 184 Cal.App.3d at p. 1476.) The Legislature has established such a nexus with respect to certain acts or omissions even where the acts or omissions do not actually impair a physician's ability to practice medicine. (E.g., §§ 2237, 2238, 2239, subd. (a); see *Griffiths v. Superior Court, supra,* 96 Cal.App.4th at p. 774.) In each such instance, it has done so by expressly identifying the act or omission as an instance of "unprofessional conduct." (See §§ 2237 [conviction for violating statutes regarding dangerous drugs], 2238 [violation of statutes regarding dangerous drugs], 2239, subd. (a) [misuse of controlled substances].)

■ To satisfy the due process considerations that attach in disciplinary actions against a professional license, we conclude that section 2354 must provide some reasonable indication that a failure to complete diversion

successfully constitutes unprofessional conduct before it may be applied to impose discipline solely on that ground. The fact that it does not, and the fact that the Board's printed agreements of understanding also fail to do so, strongly militate against interpreting section 2354 as creating an independent basis for discipline.

### B. *Statutory Scheme*

"A statute must be construed 'in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts.' [Citation.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1009 [239 Cal.Rptr. 656, 741 P.2d 154].) █ A court may consider the overall scheme in which an ambiguous statute is included in order to ascertain its intended meaning. (*Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th at p. 776.) The organization of the division, chapters, and articles is an aid to understanding its purpose. (See *People v. Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036] [division, chapter, article, and section headings may properly be considered in determining intent and are entitled to considerable weight].)

Chapter Five, the chapter most relevant here, contains separate articles regulating "Enforcement" (art. 12, § 2220 et seq.) and "Diversion Evaluation Committees" (art. 14, § 2340 et seq.). The enforcement sections of article 12 set out provisions for taking disciplinary action against a physician for acts of unprofessional conduct. They spell out the substantive bases for imposing discipline, defining specific instances of unprofessional conduct (see, e.g., §§ 2234–2305). For example, section 2239, subdivision (a) defines as unprofessional conduct a physician's self-administration of controlled substances, dangerous drugs, or alcohol, to an extent that impairs his or her ability to practice medicine safely.

Section 2354 is part of article 14, not article 12. The express purpose of article 14 is to implement a diversion program to rehabilitate physicians "with impairment due to abuse of dangerous drugs or alcohol, or due to mental illness or physical illness, affecting competency" so that they may be "returned to the practice of medicine in a manner which will not endanger the public health and safety."[3] (§ 2340.) In marked contrast to article 12, article 14 contained no substantive discipline provisions during the time period

---

[3] Section 2340 provides: "It is the intent of the Legislature that the Medical Board of California seek ways and means to identify and rehabilitate physicians and surgeons with impairment due to abuse of dangerous drugs or alcohol, or due to mental illness or physical illness, affecting competency so that physicians and surgeons so afflicted may be treated and returned to the practice of medicine in a manner which will not endanger the public health and safety."

relevant to this case. The placement of section 2354 in article 14 supports the conclusion that it was not intended to define the mere act of failure to complete diversion successfully as a substantive basis for discipline.

▮ Instead, section 2354 was intended to clarify the procedural interplay between participation in a diversion program and immunity from discipline for the conduct that led to diversion. A physician who is accepted into and participates in a diversion program may not be disciplined for "conduct that resulted in the physician and surgeon's referral to the diversion program." (§ 2350, subd. (d).) Section 2354 makes clear that this immunity is conditional: a physician who agrees to diversion may avoid discipline for the acts giving rise to the diversion only insofar as he successfully *completes* the diversion program. Failure to complete the program will waive the immunity and allow the Board to renew its accusation and seek discipline for the conduct that resulted in diversion.

We find further support for this interpretation elsewhere in section 2350. To the extent possible, contextual analysis requires harmonizing sections relating to the same subject. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; *Rodarte v. Orange County Fire Authority* (2002) 101 Cal.App.4th 19, 22 [123 Cal.Rptr.2d 475].) Section 2350 provides for the establishment of criteria for acceptance into and termination from the diversion program. (§ 2350, subd. (a), as added by Stats. 1980, ch. 1313, § 2, p. 4490.) Section 2350 was amended in 1995[4] to add subdivision (e) and other provisions detailing the circumstances under which disciplinary proceedings could be maintained against a physician who was participating in the diversion program. (Stats. 1995, ch. 252, § 1, pp. 872–873 [Sen. Bill No. 779]; § 2350, subds. (b)–(g).)[5] In 2002, section 2350 was amended further to add a provision that

---

[4] The 1995 amendment was sponsored by the California Medical Association (CMA) to remedy the specific problem created by a 1992 decision, which had implied that formal participation in the diversion program might prevent the Board from taking *any* disciplinary action against the physician. (See *Kees v. Medical Bd. of California* (1992) 7 Cal.App.4th 1801 [10 Cal.Rptr.2d 112].) In response, the Board established a policy that a physician was never referred for formal entry into diversion until the completion of any disciplinary investigation and decision. The amendment to section 2350 was designed to eliminate this policy and permit broader and earlier participation in diversion by clarifying the circumstances under which disciplinary investigation and prosecution might proceed during and after diversion. (See Assem. Com. on Appropriations, Analysis of Sen. Bill No. 779 (1995–1996 Reg. Sess.) July 11, 1995; Assem. Com. on Health, Analysis of Sen. Bill No. 779 (1995–1996 Reg. Sess.) June 26, 1995; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 779 (1995–1996 Reg. Sess.) Apr. 17, 1995; Sen. Com. on Business and Professions. Analysis of Sen. Bill No. 779 (1995–1996 Reg. Sess.) Feb. 23, 1995.

[5] Subdivision (e) of section 2350 provides: "Any physician and surgeon terminated from the diversion program for failure to comply with program requirements is subject to disciplinary action by the division for acts committed before, during, and after participation in the diversion

the failure of a physician to comply with an order to be examined "shall constitute grounds for suspension or revocation of his or her certificate." (§ 2350, subd. (j), second undesignated paragraph, as amended by Stats. 2002, ch. 1085, § 24 [Sen. Bill No. 1950].) This amendment illustrates that the Legislature knows how to specify clearly when conduct is a substantive basis for discipline. It did not do so when adopting section 2354.

## C. *Apparent Statutory Purpose*

When construing an ambiguous statute, a court may consider its apparent purpose. (See *Hughes v. Board of Architectural Examiners, supra,* 17 Cal.4th at p. 776.) Under section 2229, Board disciplinary proceedings are intended to serve twin purposes: protection of the public and rehabilitation of the physician. (§ 2229, subds. (a), (b).) If section 2354 is construed to authorize disciplinary action solely on the basis of a failure to complete diversion, it will in many instances fail both these goals. This is a case in point.

After Liskey's termination from diversion, the administrative law judge twice determined that the evidence was not sufficient to prove that his ability to practice competently was impaired and that there was no basis for imposing discipline under section 822, as charged in the accusation. The Board adopted that finding. Nevertheless, the Board imposed discipline for Liskey's failure to complete diversion successfully under section 2354. The Board found that "[g]iven [Liskey's] admissions and the differing opinions regarding whether and to what extent [he] is or has been chemically dependent, the panel ... can only carry out its public protection mandate (Business and Professions Code Section 2229) by monitoring [his] practice for a period of time. This is best effectuated by means of probation and the Diversion Program." The problem with the Board's finding is that it was based on evidence not relevant to the violation for which the Board imposed discipline, that is, Liskey's failure to complete diversion successfully. Rather, it was based on evidence relating to his continuing impairment under section 822—evidence which, it is undisputed, was insufficient to prove that violation. There was no evidence that discipline was needed to protect the public or rehabilitate Liskey for his failure to complete the diversion program.

There is yet another problem with the Board's interpretation of the statute. In order to take disciplinary action against a medical license, the Board is

program. The division shall not be precluded from taking disciplinary action for violations identified in the statement of understanding described in subdivision (b) if a physician and surgeon is terminated from the diversion program for failure to comply with program requirements. The termination of a physician and surgeon who has been referred to the diversion program pursuant to subdivision (b) shall be reported by the program manager to the division."

obligated to base its decision on *"clear and convincing proof to a reasonable certainty* and not a mere *preponderance of the evidence." (Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856 [185 Cal.Rptr. 601].) Liskey was terminated from the diversion program because on two occasions he tested positive for cocaine use. The Board never investigated nor proved the accuracy of the tests despite Liskey's vigorous dispute and his contrary evidence. At the administrative hearing, Shane Wright, a senior investigator for the Board, testified that "the diversion program does not share any information with the enforcement program except that the person has been terminated from diversion." The program manager notifies the Board that the physician has been "terminated for reasons other than successful completion of the Diversion Program."[6]

■ The statute cannot be read to authorize the Board to revoke a physician's license on the basis of the program manager's summary notice, without investigation into the reasons for termination, and with no finding of impairment or unprofessional conduct by clear and convincing evidence.[7] To say that section 2354 authorizes discipline for failure to complete diversion successfully whenever the failure is accompanied by *some* evidence of impairment would essentially permit discipline to be imposed on the basis of a lesser standard of proof. The Board's interpretation would allow it to evade the burden of proving by clear and convincing evidence that Liskey's ability to practice medicine was impaired due to misuse of drugs or alcohol.

■ In our analysis, we do not overlook the preventative functions of license discipline. The protection of the public includes the prevention of future harm. (*Griffiths v. Superior Court, supra,* 96 Cal.App.4th at p. 772 [three misdemeanor convictions involving the consumption of alcohol conclusive presumption of unprofessional conduct under § 2239].) When misconduct poses a sufficient danger to the public, the Legislature defines it as unprofessional conduct that is a basis for discipline without any showing that the misconduct actually impaired the physician's ability to practice medicine. (*Griffiths, supra,* at p. 774.) In such instances, the Legislature has made such definitions unequivocally. For example, a violation or conviction of a state or federal statute regulating dangerous drugs or controlled substances, or convictions (one felony or more than one misdemeanor) involving the use of dangerous drugs, controlled substances, or alcohol, are all defined specifically in article 12 as unprofessional conduct. (§§ 2237, 2238, 2239, subd. (a).) The

---

[6] The Board diversion program manager notified the enforcement deputy on November 30, 1998: "Pursuant to the California Code of Regulations, Title 16, Section 1357.6, this memorandum is to notify you that Lee Liskey, M.D. was terminated from the Diversion Program effective November 20, 1998, for reasons other than successful completion of the Diversion Program."

[7] Section 2350, subdivision (j) now requires that diversion participants consent to release of their program records if terminated from the program under specified conditions.

disregard of the public evidenced by such illegal conduct is deemed to be sufficient evidence of danger to the public safety without further evidence of actual impairment of professional competency. (*Griffiths v. Superior Court, supra,* 96 Cal.App.4th at pp. 773–774.) Here, however, there is nothing in the language, statutory context, or apparent purpose of section 2354 that shows a legislative intent to define a failure to complete an agreed-on diversion successfully as unprofessional conduct requiring preventative discipline. Nor does a physician's failure to complete a voluntary attempt at substance-abuse rehabilitation, by itself, demonstrate a disregard of public safety equivalent to that shown by the commission of a criminal offense.

The Board has not demonstrated by clear and convincing evidence that there is a danger to the public or that Liskey needs rehabilitation. The Board's interpretation and application of section 2354 in this case do not further the legislative goals underlying diversion programs and physician discipline.

### D. *Legislative History*

The administrative law judge and Board rested their interpretation of section 2354 on their reading of the statute's legislative history. Having independently reviewed that legislative history, we cannot agree with the Board's position that the Legislature intended to allow the Board to impose discipline solely on the ground of a physician's failure to complete successfully an agreed-on diversion program. Instead, we agree with the trial court's conclusion that the legislative history does not "provide a clear indication that the legislature intended to make a violation of section 2354 a new and separate basis for physician discipline." Because the legislative history does not illuminate the intent of the final version of section 2354, we adhere to the interpretation dictated by constitutional and contextual considerations.

 We rely on the legislative history of an ambiguous statute as dispositive only when that history is itself unambiguous. (*J.A. Jones Construction Co. v. Superior Court* (1994) 27 Cal.App.4th 1568, 1578 [33 Cal.Rptr.2d 206].) "The members of the Legislature have no opportunity to disapprove legislative history, and the Governor has no chance to veto it. Legislative history directly represents only the views of the few actors in the legislative process, including lobbyists and committee staff people, who are intimately involved with particular legislation. [¶] … [¶] [L]egislators are often 'blissfully unaware of the existence' of the issue with which the court must grapple … [and an] ambiguity may be the deliberate outcome of the legislative process." (*Id.* at pp. 1577–1578.) Only "[a] *clear statement of intent* allows a court to reasonably indulge the inference that the individual members of the Legislature may have given at least a little thought to that statement before voting on the bill." (*Id.* at p. 1579, italics added.)

Section 2354, as originally enacted in 1980, provided that: "Each physician and surgeon who requests participation in a diversion program shall agree to cooperate with the treatment and monitoring program designed by a committee. Any failure to comply with the provisions of the treatment program may result in termination of the physician's and surgeon's participation in a program." (Stats. 1980, ch. 1313, § 2, p. 4491.) In 1990, the second sentence was amended to read: "Any failure *to complete successfully a treatment program or an acceptable substitute program may result in the filing of an accusation for discipline which may include any acts giving rise to the original diversion.*" (Stats. 1990, ch. 1597, § 29, p. 7697 [Sen. Bill No. 2375], italics added.) It is this second sentence that commands our attention.

Proposals to amend section 2354 were first made in March 1989. Sen. Bill No. 1434 provided that: "Any failure to comply with the provisions of a treatment program *shall result in license revocation unless the likelihood of successful rehabilitation clearly outweighs the threat of harm to patients which may occur as a result of the impairment.*" (Sen. Bill No. 1434 (1989–1990 Reg. Sess.) § 16, as amended May 4, 1989, italics added.) The bill was amended in July 1989 to read: "Any failure to complete successfully a treatment program or an acceptable substitute program *may* result in license revocation unless the likelihood of successful rehabilitation clearly outweighs *the threat of harm to patients which may occur as a result of the impairment.*" (Sen. Bill No. 1434 (1989–1990 Reg. Sess.) § 16, as amended July 17, 1989, italics added.) The only change was the substitution of the word "may" for the word "shall." Senate Bill No. 1434 died on file before leaving the Senate on January 30, 1990.

Less than a month later, however, Senator Presley introduced Sen. Bill No. 2375, the "Medical Reform Act." The bill, drafted and sponsored by the Center for Public Interest Law (CPIL) of the University of San Diego, was designed as a comprehensive reform of physician discipline procedures. (*Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 202, 205 [97 Cal.Rptr.2d 657].) The Medical Reform Act included a proposed "Medical Judicial Procedure Improvement Act." (Sen. Bill No. 2375 (1989–1990 Reg. Sess.) § 31, as introduced Feb. 28, 1990.) It proposed an amendment to section 2354 that was identical to the amendment proposed in the final version of Senate Bill No. 1434.

Between introduction and passage of the Medical Reform Act, the second sentence of section 2354 was amended once more to read: "Any failure to complete successfully a treatment program or an acceptable substitute program may result *in the filing of an accusation for discipline which may include any acts giving rise to the original diversion.*" (Stats. 1990, ch. 1597 (Sen. Bill No. 2375), § 29, p. 7697, italics added.) This language was incorporated

into the bill and was signed into law on September 30, 1990. (Sen. Bill No. 2375 (1989–1990 Reg. Sess.) § 29, as amended May 24, 1990; Stats. 1990, ch. 1597, § 29, p. 7697.)

In interpreting section 2354, the administrative law judge and Board relied heavily on letters exchanged between the bill sponsor, CPIL, the CMA, and the Board. They placed particular reliance on a statement made by CPIL in its July 11, 1989, response to the Senate Committee on the Judiciary Staff Analysis of Senate Bill No. 1434, the predecessor bill. The response addressed the objection of the Board and CMA that under the mandatory revocation language of the predecessor bill, "licensees voluntarily [entering] diversion would have had no due process or case review [before] license revocation." The administrative law judge and the Board found "that the intent of the statutory amendment was ... to make the failure to successfully complete a diversion program an independent cause for discipline could not have been made more clear than by the bill's sponsor's statement that 'flunking out of a diversion program is a basis for discipline.' "

This was error for two reasons. ▮▮ First, comments by an individual legislator or sponsor have little value when they merely express the individual's personal understanding or opinion. (*Smith v. Santa Rosa Police Dept.* (2002) 97 Cal.App.4th 546, 564 [119 Cal.Rptr.2d 72].) The authority of such material derives from whether the material reliably reflects the collective intent of the Legislature. In *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371], the Supreme Court made clear that "[i]n construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. [Citations.] Nor do we carve an exception to this principle simply because the legislator whose motives are proferred [sic] actually authored the bill in controversy." (*Id.* at p. 589.) In *Bouquet,* the Supreme Court concluded that the legislator's letter did command respect because it was evidence of more than the legislator's personal understanding; it was a reiteration of the discussion in the Assembly committee hearing and the letter was printed in the Senate Journal on motion of a senator as a " 'letter of legislative intent.' " (*Id.* at p. 590.) Here, we do not see clear indicia that the letters from the sponsor, CPIL, the CMA or the Board reflect the collective intent of the Legislature.

Second, the letters pertain to Senate Bill No. 1434. ▮▮ Prior unpassed bills generally have little value in showing legislative intent. (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 378–379 [121 Cal.Rptr.2d 571, 48 P.3d 1128].) Where a predecessor bill is passed by both houses and contains provisions "virtually identical" to those enacted in the successor bill, the history of that predecessor bill may reliably indicate intent. (See *City of Richmond v. Commission on State Mandates* (1998) 64 Cal.App.4th 1190,

1199 [75 Cal.Rptr.2d 754].) The history of Senate Bill No. 1434 cannot be deemed a reliable and clear indication of the Legislature's intent when it enacted the Medical Reform Act because it is not "virtually identical" to the subsequent measure and because it did not pass both houses before being vetoed. Senate Bill No. 1434 died on the Senate floor and was neither approved by the full Senate nor considered by the Assembly. (Cf. *City of Richmond, supra,* 64 Cal.App.4th at p. 1199.) There is no indication that the sponsor's comments regarding Senate Bill No. 1434 were considered by any legislators other than the members of the Senate Judiciary Committee, nor is there any indication that they carried over to consideration of the Medical Reform Act, Senate Bill No. 2375. We agree with the trial court that these materials have "minimal value in construing legislative intent," and we do not rely on them.

Those sources of legislative history that do pertain to the Medical Reform Act and the collective intent of the Legislature are similarly unhelpful; they shed no light on the correct interpretation of section 2354. After section 2354 was revised to provide that a failure to complete diversion successfully "*may result in ... an accusation for discipline which may include any acts giving rise to the original diversion,*" the Legislative Counsel's Digest of Senate Bill No. 2375 continued to analyze the earlier version of the amendment. For each amended version of Senate Bill No. 2375, the digest continued to state that the amendment to section 2354 "*would ... provide that any failure to successfully complete the treatment program ... may result in license revocation unless the likelihood of successful rehabilitation clearly outweighs the threat of harm to patients which may occur as a result of the impairment.*"

Similarly, the analyses of the final draft of Senate Bill No. 2375 prepared by staffs of the Senate Rules Committee dated June 14, 1990, and the Assembly Committee on Health dated August 7, 1990, quote the language of the previous draft of the amendment to section 2354, stating that the bill "[p]rovide[s] that anyone who fails to successfully complete a diversion program which is an alternative to discipline under current law may have his or her license revoked, unless some future likelihood of successful rehabilitation outweighs any threat of harm to patients."

We are not privy to the extensive negotiations and concessions by the sponsor, the lobbying interests, or the legislators. We are left with no clear indication of the intent behind the amendment to section 2354 ultimately enacted. Because the legislative history is itself ambiguous, it is not useful in construing section 2354. (See *J.A. Jones Construction Co. v. Superior Court, supra,* 27 Cal.App.4th at pp. 1578–1579.) The legislative history offers us no reason to depart from the interpretation of section 2354 suggested by other considerations.

### E. *Past Practice and Agency Regulations*

█ The Board correctly argues that interpretations of a statute by the agency charged with its administration and enforcement, while not controlling, are entitled to great weight unless clearly erroneous. (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 88 Cal.App.3d at p. 53.) However, this principle has no application here. The Board's interpretation of section 2354 is not supported by its practice or its administrative regulations.

As for the Board's practice, the statements of understanding drafted by the Board and signed by Liskey provide only that a physician terminated "for failure to comply with the Diversion Program requirements ... may be prosecuted administratively for *violations identified above*" (italics added). The "violation[] identified above" is the alleged violation that led to his diversion, that is, alleged "[s]elf-administration of alcohol or drugs per B&P Code section 2239."

As for the regulations governing the Board's diversion program, they do not provide that a failure to complete diversion may result, by itself, in disciplinary action. Rather, the regulations provide that the program manager may terminate a physician's participation in the program for any number of reasons including failure to comply with the prescribed monitoring or treatment regimen or use of an unauthorized drug. (See Cal. Codes Reg., tit. 16, § 1357 et. seq.) The regulations offer no support for the Board's position.

### DISPOSITION

Constitutional constraints, the statutory scheme of which section 2354 is a part, and the purposes behind physician discipline expressed in sections 2229 and 2340 all support the conclusion that mere failure to complete successfully an agreed-on diversion program is not a basis for discipline under section 2354.

The order to show cause is discharged, and the petition for writ of mandate is denied. Liskey shall recover costs pursuant to California Rules of Court, rule 56.4. The stay is dissolved upon the finality of the opinion as to this court. (Cal. Rules of Court, rule 24(b)(1).)

Jones, P. J., and Stevens, J., concurred.

On August 14, 2003, the opinion was modified to read as printed above.