Filed 10/28/24 (see dissenting opinion)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LUCKY CHANCES, INC. et al., | C087061 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201780002549CUWMGDS) |
| v. | |
| CALIFORNIA GAMBLING CONTROL COMMISSION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge.  Affirmed as modified.

Buchalter, Robert S. McWhorter, and Efrat M. Cogan for Plaintiffs and Appellants.

Rob Bonta, Attorney General, T. Michelle Laird, Acting Senior Assistant Attorney General, Bart E. Hightower, Deputy Attorney General, for Defendant and Appellant.

1

After a hearing before an administrative law judge (ALJ) who issued a proposed decision concluding no cause for discipline or license denial was established, the California Gambling Control Commission (Commission) rejected the ALJ's proposed decision and renewed, with additional conditions, the gambling licenses of Lucky Chances, Inc., Rommel Medina, and Ruell Medina (collectively, Licensees). The Commission also suspended the licenses for 14 days, but stayed the suspension and ordered Licensees to pay a monetary penalty in lieu of suspension of 50 percent of Lucky Chances Casino's average daily gross gaming revenue under California Code of Regulations, title 4, section 12554, subdivision (d)(7). The Commission's decision was based on its finding that Rene Medina, a disqualified person, had material involvement with their licensed gambling operation, and the ownership and management thereof.[1]

The trial court issued a peremptory writ of administrative mandamus ordering the Commission to set aside the monetary penalty and to reconsider the penalty or discipline in light of the court's decision and order that a monetary penalty in lieu of suspension is limited to $20,000 per violation.

On appeal, Licensees argue the imposition of any discipline was unauthorized. In its cross-appeal, the Commission contends the trial court erroneously construed California Code of Regulations, title 4, section 12554, subdivision (d)(7) as being subject to the limit on fines set forth in Business and Professions Code section 19930, subdivision (c).[2]

We conclude the imposition of additional license conditions was authorized based on the Commission's findings, but California Code of Regulations, title 4, section 12554, subdivision (d) could not be used to impose discipline because the Commission did not

---

[1] We will hereafter refer to the Medinas by their first names to avoid confusion. No disrespect is intended.

[2] Undesignated statutory references are to the Business and Professions Code.

find Licensees violated any relevant law, regulation, or previously imposed license condition.

We will modify the judgment granting the peremptory writ of administrative mandamus to order the Commission to reconsider the discipline imposed under California Code of Regulations, title 4, section 12554, subdivision (d) in a manner consistent with this opinion instead of the trial court's order. We will affirm the judgment as modified.

## I. BACKGROUND

In enacting the Gambling Control Act (the Act) (§ 19800 et seq.) the Legislature declared as follows: "Public trust that permissible gambling will not endanger public health, safety, or welfare requires that comprehensive measures be enacted to ensure that gambling is free from criminal and corruptive elements, that it is conducted honestly and competitively, and that it is conducted in suitable locations." (§ 19801, subd. (g).) Further, "[a]ll gambling operations, all persons having a significant involvement in gambling operations, [and] all establishments where gambling is conducted . . . must be licensed and regulated to protect the public health, safety, and general welfare of the residents of this state as an exercise of the police powers of the state." (*Id*., subd. (i).) Because the Act is an exercise of the police power of the state, it "shall be liberally construed to effectuate those purposes." (§ 19971.)

Lucky Chances Casino is a 60-table card room in Colma (License No. GEGE-001108). Lucky Chances Casino contains a restaurant and administrative, accounting, and human resources offices, all located off of the gambling floor. The Act requires the owner of a gambling enterprise to obtain a state gambling license. (§ 19851.) Lucky Chances Casino is owned by Lucky Chances, Inc. (License No. GEOW-002757). If the owner of a gambling enterprise is a corporation, each officer, director, and shareholder must also be licensed. (§ 19852, subd. (a).) Rene owned and operated Lucky Chances Casino until he sold Lucky Chances, Inc. to his sons, Rommel and Ruell. Rene is

3

disqualified from licensure because he has been convicted of felony tax evasion. (§ 19859, subd. (c)(1).) Rommel and Ruell each own half of the shares of Lucky Chances, Inc. and hold license numbers GEOW-001326 and GEOW-001327.

On October 1, 2013, Lucky Chances, Inc. was issued an owner's gambling license with five conditions:

"1. Rene Medina shall be prohibited from entering, being present in, or in any way patronizing (a) the areas within Lucky Chances Casino in which controlled gambling is conducted and (b) any other areas related to the gambling operation, such as count and surveillance rooms, including all of the 2nd floor.

"2. All future shareholders, corporate officers, key employees, and work permit holders shall be informed of the prohibition (as identified in condition number one) . . . .

"3. Ruell Medina and Rommell [*sic*] Medina, licensed as shareholders in Lucky Chances, Inc. shall each be individually responsible for ensuring that all conditions placed on the Lucky Chances license are fully complied with, including but not limited to duties placed upon the General Manager.

"4. If Rene Medina is observed at any time by any employee entering, or being present in, (a) the areas within Lucky Chances Casino in which controlled gambling is conducted or (2) any other areas related to the gambling operation, such as count and surveillance rooms, including all of the 2nd floor, the General Manager or manager in charge shall [notify the Commission and the Department of Justice, Bureau of Gambling Control].

"5. Any communication between Rene Medina and any shareholder or employee of Lucky Chances concerning the operation of the Lucky Chances card room business shall be disclosed."

In October 2014, the Bureau of Gambling Control began investigating a complaint that Rene was still running Lucky Chances Casino and that casino employees were being used during normal work hours to work on his home. (See § 19930, subd. (a)

4

[authorizing investigations by the Department of Justice].) In August 2015, the Bureau of Gambling Control filed an accusation against Lucky Chances, Inc., Rommel, and Ruell alleging causes of action for discipline based on violations of license conditions three and five. (See § 19930, subd. (b) [authorizing Department of Justice to file an accusation with the Commission after investigation].) Licenses are valid for a period of two years after the date of issuance. (§ 19876, subd. (a).) As such, the issue of the renewal of the licenses came on for hearing while the accusation was pending, and the Commission referred the matter to an evidentiary hearing to be consolidated with the accusation. The accusation was amended to add a statement of issues. The operative accusation and statement of issues alleges four causes of action for discipline or denial of the application for renewal based on: (1) involvement of a disqualified person in Lucky Chance's business and financial affairs; (2) violation of license condition five; (3) violation of license condition three; and (4) providing false or misleading information as to material facts regarding qualification criteria, failure to reveal facts material to license qualification, and failure to timely report possible violations of the Act.

The ALJ heard the matter and issued a proposed decision concluding no cause for discipline or denial was established. With respect to the first cause of action, the ALJ specifically stated the evidence did not establish any material involvement by a disqualified person in "gaming operations." The ALJ proposed dismissing the accusation and renewing the licenses.

The Commission rejected the ALJ's proposed decision and decided the case on the record and additional briefing. As the ALJ had, the commission concluded the evidence did not establish the second, third, or fourth causes of action for discipline or denial.

With respect to the second cause of action, the Commission explained that communications between Rene and the payroll and maintenance employees and supervisors of Lucky Chances Casino regarding construction, maintenance, and furnishing of his private home did not "concern the operations of the Lucky Chances card

5

room business" and thus did not violate condition five. Because the third cause of action alleged that license condition three was violated because neither Ruell nor Rommel took sufficient action to ensure compliance with condition five, the Commission explained that the failure to prove a violation of license condition five meant the evidence did not establish that license condition three had been violated.

With respect to the fourth case of action, the Commission found that Rommel and Ruell failed to disclose that Rene used Lucky Chances, Inc.'s wholesale license, but concluded the evidence did not establish this failure to report "resulted in a violation of the Gambling Control Act." The Commission also found Rommel and Ruell failed to disclose that Lucky Chances, Inc.'s employees were being used for Rene's benefit, but because Rommel testified he was unaware of this information until the October 2014 compliance inspection, the evidence did not establish that Rommel and Ruell's failure to disclose this information "resulted in a violation of the Gambling Act."

With respect to the first cause of action, however, the Commission found "[t]he evidence established material involvement with a licensed gambling operation, and the ownership or management thereof, by a disqualified person, Rene Medina." Specifically, the Commission found that "[b]y directing Lucky Chances [Casino's] employees, including payroll and maintenance staff, to perform services and purchase furnishings for his home, Rene. . . was materially involved, and exercised managerial and ownership control over the finances and personnel of Lucky Chances [Casino], a licensed gambling operation."

The Commission suspended the licenses for 14 days. It then stayed the suspension and ordered Licensees to pay a monetary penalty in lieu of suspension pursuant to California Code of Regulations, title 4, section 12554, subdivision (d)(7)(A) of 50 percent of Lucky Chances Casino's average daily gross gaming revenue.

With respect to the statement of issues, the Commission found Licensees had met their burden of proving qualifications for licensure but imposed additional license

6

conditions based on Licensees' failure to disclose Rene's use of Lucky Chances, Inc.'s wholesale license, their relationship and association with Rene, and their failure to exercise reasonable oversight over their payroll and maintenance departments in relation to those departments' interaction with Rene. Under the new conditions, Rene is "prohibited from entering, being present in, or in any way patronizing *any areas* of Lucky Chances [Casino's] property." (Italics added.) He is also prohibited from having any direct or indirect communication with any employee or owner of Lucky Chances Casino, except he may communicate with his immediate family members on matters that do not relate to any part of Lucky Chances, Inc.'s business.

Licensees filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) in the trial court challenging the Commission's decision.

The trial court granted Licensees' petition in part and denied it in part. The court found substantial evidence supported the Commission's finding of material involvement by a disqualified person in the management and oversight of "Lucky Chances' (a gambling operation) employees and affairs sufficient to constitute a violation of the Gambling Control Act." However, it found the Commission abused its discretion in imposing a fine in excess of the statutory limit imposed by section 19930, subdivision (c) and referenced in California Code of Regulations, title 4, section 12554, subdivision (d)(7). The court entered judgment accordingly and issued a peremptory writ of administrative mandamus ordering the Commission to set aside the monetary penalty and to reconsider the penalty or discipline in light of the court's decision.

Licensees appealed and the Commission filed a cross appeal.

## II. DISCUSSION

### A. Standard of Review

Because Licensees' claims raise pure questions of law regarding the Commission's authority under the Act, our standard of review is de novo. (*Bostean v. Los Angeles Unified School Dist*. (1998) 63 Cal.App.4th 95, 107-108; *California Teachers Assn. v.*

7

*Butte Community College Dist.* (1996) 48 Cal.App.4th 1293, 1299.) " 'We consider first the words of a statute, as the most reliable indicator of legislative intent.' [Citation.] In doing so, we give the words 'their usual and ordinary meaning,' viewed in the context of the statute as a whole. [Citation.] As part of this process, ' " '[every] statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " ' [Citation.] [¶] When the language of a statute is ambiguous—that is, when the words of the statute are susceptible to more than one reasonable meaning, given their usual and ordinary meaning and considered in the context of the statute as a whole—we consult other indicia of the Legislature's intent, including such extrinsic aids as legislative history and public policy. [Citations.] If there is no ambiguity, ' " ' "we presume the Legislature meant what it said and the plain meaning of the statute governs." ' " ' " (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1184.)

"In determining whether an agency has incorrectly interpreted the statute it purports to implement, a court gives weight to the agency's construction." (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415.) "How much weight to accord an agency's construction is 'situational,' and greater weight may be appropriate when an agency has a ' "comparative interpretive advantage over the courts," ' as when ' "the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion." ' " (*American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 461.) Another relevant consideration is whether "the agency 'has consistently maintained the interpretation in question.' " (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 13.) The Commission has not demonstrated any construction of its authority under the Act that is entitled to significant weight. "Nevertheless, the proper interpretation of a statute is ultimately the court's responsibility." (*American Coatings Assn. v. South Coast Air Quality Management Dist., supra*, at p. 462.)

8

*B.      Authority to Impose Discipline*

Licensees raise various challenges to the Commission's authority to impose discipline without finding a violation of the Act or a nexus between Rene's conduct and gambling operations. In particular, Licensees contend the Commission did not base its disciplinary finding on any enforcement provisions of the Act. Rather, its findings with respect to the first cause of action relied on a provision of the Act relating to administrative responsibilities—section 19823. The Commission contends this argument is barred because it was not raised at the administrative hearing or in the trial court. Because this is a pure question of law, we may consider the issue for the first time on appeal. (*Gilliland v. Medical Bd. of California* (2001) 89 Cal.App.4th 208, 219.) We also find good cause to do so. After the trial court proceedings, this court decided *Swallow v. California Gambling Control Com*. (2022) 77 Cal.App.5th 1037. In *Swallow*, the Commission explained its position that "penalties are unlimited under [section 19930, subdivision (c)]. In addition, the Commission claim[ed] fines are imposed for specific violations of the Act and regulations, whereas monetary penalties are imposed for activities *that do not violate express provisions of the Act* and regulations." (*Id*. at p. 1046, italics added.) This court disagreed, explaining, "The statutory and regulatory framework of the Act and regulations does not support the Commission's interpretation." (*Ibid*.) Neither the trial court nor the parties had the benefit of *Swallow* and its implicit suggestion that the Commission lacks authority to impose penalties without finding a violation of an express provision of the Act or regulation prior to this appeal. We address that suggestion now.

"[T]he internal organization of a code may aid in understanding a statute's purpose [citation], and chapter and section headings in the codes may be considered in determining legislative intent." (*In re Mark B*. (2007) 149 Cal.App.4th 61, 76.) Section 19823 is part of Article 2 of the Act—entitled "Administration." Other parts of this article create the Commission and confer its jurisdiction. (§§ 19811, 19812, 19814,

9

19815.)  Section 19823 provides, in relevant part:  "The *responsibilities of the commission* include . . . [¶] . . . [¶] [a]ssuring that there is no material involvement, directly or indirectly, with a licensed gambling operation, or the ownership or management thereof, by unqualified or disqualified persons."[3]  (§ 19823, subd. (a)(2), italics added.)

Licensees contend section 19823 does not set a standard of conduct upon which the Commission may find a violation.  Licensees also argue section 19823 is not an enforcement provision and does not give reasonable notice of any standard of conduct.  Licensees liken this case to *Medical Board v. Superior Court (Liskey)* (2003) 111 Cal.App.4th 163, 174 (*Liskey*), which explained, in part, that "[a] statute authorizing the [Medical] Board [of California] to impose discipline against a medical license must include *some* reasonably clear identification of the basis for imposing that discipline."[4]  While the Commission's decision does not expressly state which statute it believes Licensees violated (if any), both sections 19823 and 19824 are identified as legal authority for its decision.  As we will discuss in further detail in the context of the monetary penalty imposed, we agree with the suggestion that Licensees do not "violate"

---

[3]  Section 19826, subdivision (b) similarly provides that the Department of Justice's responsibilities include "monitor[ing] the conduct of all licensees and other persons having a material involvement, directly or indirectly, with a gambling operation or its holding company, for the purpose of ensuring that licenses are not issued or held by, and that there is no direct or indirect material involvement with, a gambling operation or holding company by ineligible, unqualified, disqualified, or unsuitable persons."

[4]  The *Liskey* court also explained, "[T]o justify the imposition of discipline, there must be some nexus between an act or omission and the professional's fitness or competence to practice." (*Liskey, supra*, 111 Cal.App.4th at p. 174.)  The origin of this requirement is the notion that "a statute can constitutionally bar a person from practicing a lawful profession only for reasons related to his fitness or competence to practice that profession." (*Newland v. Board of Governors* (1977) 19 Cal.3d 705, 711.)  Licensees attempt to rely on this concept without establishing an analogous constitutional right is at play with respect to gambling licenses.

10

section 19823 and the statute does not reasonably indicate to licensees that they can be charged with violating it directly. It is a statute relating to the Commission's performance of its duties under the Act.

Nonetheless, the Commission is tasked under section 19823 with "[a]ssuring that there is no material involvement, directly or indirectly, with a licensed gambling operation, or the ownership thereof, by . . . disqualified persons." (§ 19823, subd. (a)(2).) But this statute does not specify how the Commission should fulfill its responsibilities. We conclude one possibility is by exercising its powers, such as those set forth in section 19824: "The commission shall have all powers necessary and proper to enable it fully and effectually to carry out the policies and purposes of this chapter, including, without limitation, the power to do all of the following: [¶] . . . [¶] (b) For any cause deemed reasonable by the commission, deny any application for a license, permit, or approval provided for in this chapter or regulations adopted pursuant to this chapter, limit, condition, or restrict any license, permit, or approval, or impose any fine upon any person licensed or approved." Likewise, under section 19856, subdivision (c), "[i]n reviewing an application for any license," the Commission is required to consider "whether issuance of the license will undermine public trust that the gambling operations with respect to which the license would be issued are free from criminal and dishonest elements and would be conducted honestly."

Together, these statutes suggest the Commission may, as a general matter, condition a license to prevent involvement by a disqualified person consistent with its responsibilities under the Act. As such, we disagree with Licensees' broad assertion that findings based on section 19823 provide no legal basis to impose any form of discipline at all. We will now address in more detail whether the Commission's findings were legally sufficient to authorize the new license conditions imposed or the penalty in lieu of suspension under California Code of Regulations, title 4, section 12554, subdivision (d)(7).

11

### 1. *New License Conditions*

Licensees contend that even if section 19823 provided grounds for discipline, there was no basis to conclude Rene was "materially" involved with a "licensed gambling operation" or "the ownership or management thereof" as those terms are used in the Act. The Commission found that "[b]y directing Lucky Chances' employees, including payroll and maintenance staff, to perform services and purchase furnishings for his home, Rene . . . was materially involved, and exercised managerial and ownership control over the finances and personnel of Lucky Chances, a licensed gambling operation." Under the Act, a "gambling operation" is defined as "exposing for play one or more controlled games that are dealt, operated, carried on, conducted, or maintained for commercial gain." (§ 19805, subd. (q).) In contrast, a " '[g]ambling enterprise' means a natural person or an entity, whether individual, corporate, or otherwise, that conducts a gambling operation and that by virtue is required to hold a state gambling license under this chapter." (*Id.*, subd. (m).) Licensees argue there was no finding that Rene was involved with a "gambling operation" as defined by the Act, and imposing discipline based on acts and omissions that did not involve "gambling operations" is not authorized by statute. This argument ignores the fact that section 19823 charges the Commission with "[a]ssuring that there is no material involvement, directly *or indirectly*, with a licensed gambling operation, *or the ownership or management thereof*, by unqualified or disqualified persons." (§ 19823, subd. (a)(2), italics added.) It is therefore broad enough to cover the situation at hand even if we narrowly define the "licensed gambling operation" to include only Lucky Chances Casino's gambling activities.[5] We disagree

---

[5] The Commission counters that the broader phrase "*licensed* gambling operation," must refer to the licensed entity itself. It contends the phrase "gambling operation," despite the definitions set forth in section 19805, is "also used in the Act to connote, more broadly, an entity akin to the licensed gambling enterprise itself." We need not resolve this issue.

with Licensees' assertion that the trial court ignored the requirement that prohibited involvement be "material." As the trial court concluded, Rene's "ability to direct Lucky Chances employees to perform work at his home, while being paid by Lucky Chances, indicates a significant involvement in the management of Lucky Chances." The additional conditions imposed with the license renewal thus appear to be within the Commission's powers under the Act to impose as they are aimed at assuring that a disqualified individual does not have any direct or indirect material involvement with the ownership of a licensed gambling operation.

       2.     *Penalty In Lieu of Suspension*

We conclude, however, that because Licensees could not violate section 19823 itself, an alleged violation of this statute cannot form the basis for the imposition of discipline under California Code of Regulations, title 4, section 12554, subdivision (d). This regulation provides, in relevant part: "Upon a finding of a *violation of the Act*, any regulations adopted pursuant thereto, any law related to gambling or gambling establishments, violation of a previously imposed disciplinary or license condition, or laws whose violation is materially related to suitability for a license, registration, permit, or approval, the Commission may do any one or more of the following: [¶] . . . [¶] (2) Suspend the license, registration, or permit;" or "(7) Order the holder to pay a monetary penalty in lieu of all or a portion of a suspension." (Code of Regs., tit. 4, § 12554, subd. (d), italics added.) Because section 19823 is a statute that defines the *Commission*'s responsibilities, and does not prescribe conduct for licensees, we agree with Licensees that they cannot be found to "violate" it.

Curiously, our dissenting colleague never explains how licensees can violate section 19823. Rather, our dissenting colleague suggests *we* have found no violation of any relevant law. (Dis. opn. *post*, at p. 1.) That was not our role in this administrative proceeding. Rather, it was the Commission's role and the Commission's decision is not susceptible to the suggestion that it found a violation of any other statute, regulation, or

13

previously imposed condition.  On appeal, however, the Commission argues sections 19920 and 19922 subsume the prescription against the involvement of unsuitable persons in gambling enterprises set forth in section 19823 and "are expressly set forth as bases for discipline."  Section 19920 provides:  "It is the policy of the State of California to require that all establishments wherein controlled gambling is conducted in this state be operated in a manner suitable to protect the public health, safety, and general welfare of the residents of the state.  The responsibility for the employment and maintenance of suitable methods of operation rests with the owner licensee, and willful or persistent use or toleration of methods of operation deemed unsuitable by the commission or by local government shall constitute grounds for license revocation or other disciplinary action."  Section 19922 provides:  "No owner licensee shall operate a gambling enterprise in violation of any provision of this chapter or any regulation adopted pursuant to this chapter."  While the accusation cited these statutes, the Commission's decision does not mention them.

We conclude the decision is not susceptible to the interpretation that the Commission found a violation of either statute or imposed any discipline based on such a finding.  Additionally, we disagree with the suggestion that sections 19920 or 19922 transform the Commission's general responsibilities under section 19823 into provisions that can be violated by a licensee within the meaning of the regulation at issue.  We also observe that the Commission did not find Licensees violated any of the previous license conditions that appear to have been imposed to ensure that a disqualified person was not involved with the gambling operation.  Likewise, Licensees were accused in count four of failing to timely report possible violations of the Act, but the Commission concluded the evidence did not support this allegation.  The Act and its implementing regulations do not make it reasonably clear that a licensee could be found to "violate" any provision of the Act based on the findings made by the Commission in this proceeding.  (See *Liskey, supra*, 111 Cal.App.4th at p. 174 ["A statute authorizing the [Medical] Board [of

14

California] to impose discipline against a medical license must include *some* reasonably clear identification of the basis for imposing that discipline"].)  As such, imposition of discipline, including the penalty in lieu of suspension, was not authorized by California Code of Regulations, title 4, section 12554, subdivision (d) in this proceeding.

### III.  DISPOSITION

The judgment granting the peremptory writ of mandamus is modified to order the Commission to reconsider the discipline imposed under California Code of Regulations, title 4, section 12554, subdivision (d) in a manner consistent with this opinion instead of the trial court's order.  As modified, the judgment granting the petition in part and denying it in part is affirmed.  Lucky Chances, Inc., Rommel Medina, and Ruell Medina shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3).)


/S/

RENNER, Acting P. J.



I concur:


/S/

KRAUSE, J.


15

MESIWALA, J., Dissenting.


A convicted felon used his unique position as the former owner of the casino and as the father of the current owners of the casino to direct casino staff to: (1) clean, polish furniture, perform yardwork, paint a wine cellar, and provide similar labor at his newly constructed Woodside home at casino expense; and (2) purchase furnishings for the new Woodside home at discount prices using the casino's seller's permit. This occurred over an extended period, despite the casino's awareness of the intent by the California Gambling Control Commission to ensure the felon father's separation from casino operations, as demonstrated by the commission's imposition of extensive license conditions on the casino.

The majority concludes these circumstances did not amount to a violation of any of the following: (1) the Gambling Control Act (Bus. & Prof. Code, § 19800 et seq.)[1]; (2) any "law related to gambling or gambling establishments"; or (3) a law "materially related to suitability for a license." (Cal. Code Regs., tit. 4, § 12554, subd. (d).) I disagree.

A primary goal of the Gambling Control Act is ensuring that casinos are separated from criminal and corruptive elements. (§ 19801, subd. (g).) The Gambling Control Act makes it the responsibility of the California Gambling Control Commission to ensure there is no material involvement by felons with casino operations and empowers the commission "without limitation," to take "actions deemed to be reasonable to ensure that [convicted felons are not] associated with controlled gambling activities." (§§ 19823, subd. (b); 19824, subd. (d).)

---

[1] Statutory references are to the Business and Professions Code.

1

The majority's conclusion is inconsistent with: (1) the broad powers of the California Gambling Control Commission; (2) the declaration that the Gambling Control Act "is an exercise of the police power of the state for the protection of the health, safety, and welfare of the people of the State of California, and *shall be liberally construed* to effectuate those purposes" (§ 19971, italics added); and (3) our obligation to harmonize statutory provisions to carry out the overriding legislative purpose of the statutory scheme as a whole (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 933).

The majority notes that a provision of the Gambling Control Act – section 19920 – makes willful or persistent use or toleration of unsuitable operation methods, as determined by the California Gambling Control Commission, grounds for disciplinary action. But the majority then concludes that section 19920 does not support the California Gambling Control Commission's exercise of discipline here because: (1) "the [c]ommission's decision does not mention" section 19920; and (2) section 19920 cannot "transform the [c]ommission's general responsibilities under section 19823 into provisions that can be violated by a licensee within the meaning of the regulation at issue." This conclusion is at odds with the court's duty to harmonize the statutory scheme.

The majority's narrow construction of "violations" that warrant discipline may also lead to unintended consequences. It may prevent the California Gambling Control Commission's exercise of discipline in other cases where offensive acts or omissions are not explicitly delineated in statute, regulation, and conditions. (See *Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 575 [it is unnecessary for governing statute to enumerate specific acts of unprofessional conduct]; *Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 582 [professionals are expected to recognize conduct that breaches the profession's ethical code or is unbecoming of the profession].)

Finally, the majority concludes that the California Gambling Control Commission can impose discipline here, but not the discipline outlined in the regulation that lists the

2

commission's disciplinary options. Although imposing license conditions is listed in that regulation (Cal. Code Regs., tit. 4, § 12554, subd. (d)(4)), the majority reasons that the California Gambling Control Commission can still impose those conditions here because of the commission's general statutory power to "condition" a license for any cause deemed reasonable. (§ 19824, subd. (b).) But that general statutory power is "without limit" and therefore includes the broader power to discipline for any cause deemed reasonable. The majority's construction creates an unnecessary line between the powers of the California Gambling Control Commission under the Gambling Control Act and its powers under its own regulations.

For these reasons, I would affirm the commission's authority to impose discipline under California Code of Regulations, title 4, section 12554, subdivision (d).

/S/

_____
MESIWALA, J.

3