Filed 1/10/25

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of DIANNE YORK GOLDMAN and MITCHEL PAUL GOLDMAN. | |
| DIANNE YORK GOLDMAN, Appellant, v. MITCHEL PAUL GOLDMAN, Respondent. | D082021 (Super. Ct. No. DN149413) |

APPEAL from orders of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge. Request for judicial notice is granted. Reversed and remanded with directions.

John L. Dodd & Associates and John L. Dodd for Appellant.

Meyer Olson Lowy & Meyers, Lisa Helfend Meyer, Philip J. Monahan; Walzer Melcher & Yoda, Christopher C. Melcher and Cynthia J. Ponce for Respondent.

---

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts B and C of the discussion.

Dianne York Goldman (Wife) and Mitchel Paul Goldman (Husband) were divorced in 2009. The judgment incorporated the parties' stipulated marital settlement agreement (MSA). Many years later, Wife requested orders under Family Code section 291[1] to enforce provisions of the MSA. She also sought attorney's fees and costs. Husband asserted the laches defense against Wife's MSA-related claims and opposed her monetary requests.

The trial court held that Wife's claims under the MSA were barred by laches, and it relied heavily on that ruling to deny her requests for attorney's fees and costs. But invoking the doctrine of laches requires a finding of prejudice, and here the court's conclusion that Wife's delay prejudiced Husband lacks substantial evidentiary support. We therefore reverse the court's order denying Wife's requests to enforce the MSA as well as the subsequent denial of her request for attorney's fees and costs. We remand this matter for the trial court to conduct further proceedings on the merits of Wife's claims and to reconsider her requests for fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2009, a judgment of dissolution ended Wife's and Husband's nearly 13-year marriage. Prior to the judgment being entered, the parties executed an MSA providing, in relevant part, that: (1) two–thirds of the stock the couple acquired while married would be awarded to Husband with the remainder going to Wife; (2) the couple would execute joint tax returns for 2007 and 2008 with any refunds going to Wife; and (3) they would evenly split the patents issued from inventions Husband created during the marriage, postseparation royalties earned by Husband for textbooks he wrote

---

[1] Subsequent undesignated statutory references are to the Family Code.

2

during the marriage, and artwork they acquired. This appeal stems from Wife's attempts to enforce these provisions of the MSA.

## A. *Wife's efforts to enforce the judgment began in 2010.*

In August 2009, before the parties' marriage was dissolved, Husband disclosed to Wife what he believed comprised the couple's community and separate property. He identified as community property unspecified numbers of shares of stock in four companies and "multiple paintings and sculptures," but no royalties or patents. The record does not include Wife's similar disclosure; however, she believed the couple had acquired stock in other companies and that Husband created inventions during their marriage that resulted in patents.

In May 2010, Wife's then-attorney sent Husband's attorney two letters complaining that the parties had neither filed joint tax returns for 2007 and 2008 nor divided their stock, patents, royalties, or artwork. As for the tax returns, both Husband and Wife proposed joint returns in August 2009 and February 2010, respectively, but they could not agree that the other's proposed returns were accurate. Consequently, Husband filed separate returns for 2007 and 2008, and presumably, Wife did the same.

Husband's attorney responded to these letters by describing his client's potential claims against Wife for breaching the MSA. More specifically, he accused Wife of failing to pay rent for the time she stayed in the house that was awarded to Husband, selling the couple's stock and keeping the proceeds, stalling on dividing the couple's artwork, removing more furniture from their house than she had been awarded, and refusing to pay the accountant who prepared the joint tax returns that Husband proposed they sign. Husband's attorney's letter closed by suggesting the parties attempt to settle their disputes. Wife's attorney did not respond. According to Husband, shortly

3

after his attorney sent this response he believed the postjudgment litigation was over.

In 2018 and 2020, Wife filed with the trial court the two requests for orders (RFOs) that are the subject of this appeal. Between 2010 and 2018, Wife had conducted her own investigation of her claims. In 2017 and 2018, she wrote letters to two dozen entities she believed had information about shares of stock the couple owned. It does not appear that she received any stock-related information in response to these inquiries. She also wrote letters to companies she believed had paid Husband royalties. In addition, Wife hired an expert to determine whether Husband had obtained any patents from inventions he created during the marriage.

Wife's 2018 RFO sought to enforce the tax return provision of the MSA. She requested that the court order Husband to provide his individual tax returns from 2007 and 2008 and pay her the amounts of refunds he received with interest, or in the alternative, require him to amend his returns and pay her the refunds plus interest.[2] Her 2020 RFO requested the court enforce the MSA's provisions regarding the division of stocks, patents, royalties, and artwork because she believed those assets had not been divided. Along with asserting her substantive claims, Wife's RFOs sought need-based attorney's fees and costs (collectively, fees) under section 2030.

**B.** ***The trial court held that laches barred Wife's claims and that she was not entitled to fees.***

Husband asserted the affirmative defense of laches against the claims in Wife's RFOs and requested that the court bifurcate the proceedings so this defense could be addressed first. By way of background, section 291,

---

[2] The deadlines for amending Husband's 2007 and 2008 tax returns to obtain refunds had long passed by 2018. (26 U.S.C. § 6511 [three years]; Rev. & Tax Code, § 19306 [four years].)

4

subdivision (a) provides that "[a] money judgment or judgment for possession or sale of property that is made or entered under this code . . . is enforceable until paid in full" and is not subject to the requirement that the judgment be renewed to maintain enforceability. (§ 291, subds. (a) & (b).) Thus, as a matter of statutory law, an unsatisfied judgment for money or property may be enforced at any time.

But there are equitable defenses to enforcement actions, even when the actions are timely brought according to a statute. One such defense is laches, which " 'is an equitable time limit on a party's right to bring suit, resting on the maxim that "equity aids the vigilant, not those who sleep on their rights." ' " (*George v. Shams–Shirazi* (2020) 45 Cal.App.5th 134, 141–142 (*George*).) A party will succeed on a laches defense if they establish "(1) failure to assert a right, (2) for some appreciable period so as to amount to unreasonable delay, (3) which results in prejudice to the adverse party."[3] (*In re Marriage of Powers* (1990) 218 Cal.App.3d 626, 642.) The court agreed to adjudicate Husband's laches defense first. In December 2022, it conducted a two-day hearing on the defense and on Wife's requests for fees. Before taking Wife's and Husband's testimony, the court ruled that the laches defense was potentially available to Husband against all of Wife's claims. Wife conceded that she failed to assert her rights, which left as the only disputed issues whether her delay in doing so was unreasonable and prejudicial to Husband.

_____

[3]    In lieu of prejudice, a party asserting laches may argue that the adverse party unreasonably delayed bringing her claim because she had acquiesced to the conduct on which her claim is based. (*In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353, 1359–1360.) The trial court did not find acquiescence by Wife and Husband does not raise this theory on appeal. Accordingly, we do not address it.

In February 2023, the court filed a written statement of decision denying all of Wife's claims based on laches. Wife's delay in bringing her 2018 RFO was unreasonable because she knew by May 2010 that the couple had not signed joint tax returns for either 2007 or 2008. In reaching this conclusion, the court rejected Wife's two justifications for her delay in asserting her claims: (1) she was distracted by lawsuits related to the community property she was awarded as part of the dissolution, and (2) she was unable to find a family law attorney she thought could suitably handle her claims. It determined that this delay prejudiced Husband because the time to amend his returns had passed, which means that Husband may have to make Wife whole by paying money out of his own pocket.[4]

The court also found that Wife's delay in filing her 2020 RFO, which asserts her stock, patents, artwork, and royalty claims, was unreasonable and prejudicial to Husband. Wife had notice of all these claims as early as 2009, when Husband submitted his predissolution disclosure, but no later than 2013, when Wife claimed she first read it. The delay prejudiced Husband "because, as a result of the passage of time, the evidence needed to rebut [Wife's] claims is no longer available." According to the court, Husband "is not able to recall details of the events based on the passage of time, and documentary evidence of the events of the relevant years is no longer available." "Had [Wife] given notice to [Husband] of her claims within a reasonable time," the court explained, he "could have preserved the evidence

_____

[4]    The court, sua sponte, found that Wife had "unclean hands" with respect to her tax return claim because the court believed she failed to comply with an order requiring her to notify Husband by early March 2009 whether she would agree to file a joint income tax returns for the year 2007. In the court's view, this finding "supported [Husband's] laches defense with respect to equity." Husband does not raise an unclean hands defense on appeal.

6

needed to rebut her claims." The court determined it would be "inequitable" for Wife to "remain silent all these years and pursue her claims now that the evidence [Husband] needs is unavailable."[5]

As for Wife's requests for fees, the court denied them after finding that she had the ability to fund her postjudgment litigation, Husband had already made a substantial contribution to her legal fees, and it was "unreasonable" for her to pursue her claims considering the court's ruling on Husband's laches defense. The court filed its findings and order after hearing in June 2023, from which Wife has appealed.[6]

---

[5] The trial court's statement of decision also comments on the merits of Wife's claims. We do not address these comments because "laches does not implicate the merits of the claim against which it is asserted." (*Truck Ins. Exchange v. Workers' Comp. Appeals Bd.* (2016) 2 Cal.App.5th 394, 403.)

[6] Wife's notice of appeal identified a February 2023 minute order denying her requests for fees and the statement of decision disposing of her RFOs as the decisions being appealed. The minute order directed Wife's counsel to prepare a findings and order after hearing (FOAH). An appeal does not lie from a minute order in that circumstance. (*Davis v. Taliaferro* (1963) 218 Cal.App.2d 120, 123.) And the general rule is that a statement of decision is not an appealable order. (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) In response to our request that she address these potential defects, Wife provided the FOAH, which is an appealable order under Code of Civil Procedure section 904.1, subdivision (a)(2). We exercise our discretion pursuant to Rule of Court 8.104(d)(2) and (e) to treat Wife's notice of appeal as being filed immediately after the FOAH issued. We are also satisfied that the statement of decision is an appealable order under Code of Civil Procedure section 904.1, subdivision (a)(2) because in "substance and effect," it is the final order on Wife's RFOs. (*Lyons v. Goss* (1942) 19 Cal.2d 659, 670.) Husband agrees that both decisions are appealable orders.

## DISCUSSION

This appeal raises the novel legal question of whether the affirmative defense of laches can be asserted against a former spouse's request for an order to enforce a nonsupport family court judgment. Wife argues that the trial court erred in allowing Husband to rely on the defense and in holding that it barred her enforcement claims. She reads section 291 as limiting the availability of the defense to a category of claims that do not include hers. Moreover, even if laches was properly invoked, Wife contends Husband failed to show that her delay in seeking to enforce provisions of the judgment was either unreasonable or prejudicial. She also takes issue with the court's decision to deny her requests for fees, which relied heavily on its laches ruling. Husband counters that the trial court correctly construed section 291 as allowing the defense, properly held that it defeated Wife's claims, and appropriately denied her requests for fees.

Each side makes some meritorious arguments, the net result of which requires that we reverse and remand for further proceedings. We agree with Husband that laches was available to him, but Wife correctly observes that the trial court's findings of prejudice are not supported by substantial evidence at this stage of the proceedings. And because the trial court's decision to deny Wife's fee requests was based in large measure on its legally erroneous conclusion that she was guilty of laches, we must reverse that ruling as well.

**A.**   *A laches defense was available to Husband because Wife was not attempting to enforce a judgment for child, family, or spousal support.*

Section 291 concerns the enforcement of family court judgments. In relevant part, the statute provides:

8

"A money judgment or judgment for possession or sale of property that is made or entered under this code, including a judgment for child, family, or spousal support, is enforceable until paid in full or otherwise satisfied. [¶] . . . [¶]"

"In an action to enforce a judgment for child, family, or spousal support, the defendant may raise, and the court may consider, the defense of laches only with respect to any portion of the judgment that is owed to the state." (*Id.*, subds. (a) & (d).)

The parties dispute the reach of section 291, subdivision (d)'s statement concerning the availability of laches. Wife claims that it identifies the only circumstance in which it may be applied, i.e., against the State in an action to enforce a support judgment. In contrast, Husband reads subdivisions (a) and (d) as making laches available in all actions to enforce family court judgments and orders *except* actions to enforce support payments not involving the State.

The interpretation of a statute is a question of law that requires us to "ascertain the Legislature's intent in order to effectuate the law's purpose." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572.) We assign the words of the statute a " 'plain and commonsense meaning . . . in the context of the statutory framework as a whole . . . giving significance to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165–166.) When the disputed language is clear and susceptible of only one reasonable interpretation, we generally must " 'follow its plain meaning.' " (*Id.* at p. 165.) But when there is more than one reasonable interpretation, we " 'may consider other aids, such as the statute's purpose, legislative history, and public policy' " to determine the statute's meaning. (*Id.* at p. 166.)

Neither party's reading of the section 291 is patently unreasonable because the statutory language does not expressly address when the laches defense is available. Instead, we must attempt to infer whether the Legislature intended to implicitly allow a laches defense when a party seeks to enforce a family court judgment. From the words of the statute alone, we are unable to determine whether subdivision (d) identifies the *only* circumstance when laches can apply, or rather establishes that the defense applies in all circumstances *except* an action to enforce a judgment for support payments that does not involve the State. We therefore turn to the relevant legislative history.

Assembly Bill No. 2126 (Assembly Bill 2126) replaced the prior version of section 291 with its present form. (Stats. 2006, ch. 86 (Reg. Sess. 2005–2006) § 4.) The California Law Revision Commission (Commission) recommended a statutory amendment to simplify the rules for enforcing family court judgments. (Enforcement of Judgments Under the Family Code (Nov. 2005) 35 Cal. L. Revision Com. Rep., pp. 161, 165–170 (2005) (Enforcement of Judgments).) Under the previous version of section 291, judgments or orders for the possession or sale of property were subject to a 10–year period of enforceability that could be extended by renewal. (Compare Stats. 2000, ch. 808, § 25 with Stats. 2006, ch. 86, § 4, amending § 291.) Then-section 4502 provided that support judgments were enforceable until paid in full or otherwise satisfied and were not required to be renewed. (Compare Stats. 2002, ch. 304, § 1 with Stats. 2006, ch. 86, § 6, amending § 4502.) Former section 4502, subdivision (c) also stated what current section 291 provides in subdivision (d). Nonsupport money judgments were also enforceable until paid in full and were not required to be renewed. (See Code of Civ. Proc., § 683.310.) Assembly Bill 2126 combined former sections 291

10

and 4502, included nonsupport money judgments among those that were enforceable until paid in full and were not subject to a renewal requirement, and added subdivisions (e), (f), and (g) to section 291. (Cal. Law Revision Com. com., West Ann. Fam. Code (2007 ed.) foll. § 291.)

The Commission's report specifically addressed the applicability of laches in actions to enforce family court judgments. It stated, "In general it is appropriate for a court to consider whether unreasonable and prejudicial delay in enforcing a judgment should preclude enforcement on equitable grounds. However, the Legislature has specifically exempted a support judgment from the application of laches (except as to any amount of a judgment *that is owed to the state*)." (Enforcement of Judgments, *supra*, at p. 171, italics added.) Pertinent here, the Commission went on to say that Assembly Bill 2126 "would preserve the existing exemption of a support judgment from laches, *but would not extend that exemption to other types of Family Code judgments.*"[7] (Enforcement of Judgments, at p. 171, italics added.)

Two legislative committees echoed these comments. A Senate Judiciary Committee bill analysis stated that "laches would not be available during enforcement of support judgments. Other judgments and orders under the Family Code would be subject to the defense of laches." (Sen. Jud. Com., Analysis of Assem. Bill 2126 (2005–2006 Reg. Sess.) as amended April 20, 2006, pp. 4, 6.) Likewise, the Senate Rules Committee observed that "non-support money judgments" are not "exempt from a defense of laches." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 2126 (2005–2006 Reg. Sess.) as amended April 20, 2006, p. 2.)

---

[7] We grant Husband's request that we take judicial notice of the Commission's Report. Prior to oral argument, we sent the parties a focus letter concerning the legislative history cited in this section.

11

The Commission's proposed version of section 291 was enacted with no changes to subdivisions (a) and (d) or further commentary on the applicability of laches. The clarity of this legislative history establishes that laches is available in actions to enforce all family court judgments except support judgments that do not involve the State. (*Medical Board v. Superior Court* (2003) 111 Cal.App.4th 163, 179 [unambiguous legislative history is dispositive when interpreting an ambiguous statute].) Because Wife does not seek to enforce a support judgment, the laches defense was available to Husband.

**B.** ***The trial court's findings on prejudice are not supported by substantial evidence because the record at this stage of the proceedings does not establish that evidence Husband may need to defend against Wife's claims is actually unavailable.***

The trial court dismissed Wife's claims under laches after finding that Wife's delay in bringing them was both unreasonable and prejudicial. Wife asserts a number of challenges to that ruling, including that the trial court's findings on prejudice are not supported by substantial evidence. We agree that these findings lack sufficient evidentiary support based on the present record, and on that basis we reverse the order denying her request to enforce the MSA. But the reversal is without prejudice to Husband reasserting a laches defense once Wife has specifically identified the specific asset or claimed amount she seeks to recover.

A trial court's laches determination is reviewed under a mixed standard—"i.e., review for abuse of discretion and substantial evidence." (*City of Hesperia v. Lake Arrowhead Community Services Dist.* (2023) 93 Cal.App.5th 489, 513 (*City of Hesperia*).) "[W]e defer to the trial court's weighing of the equities of the delay and prejudice and affirm[ ] so long as the application or denial of laches does not result in manifest injustice, but

12

[we] consider[ ] whether the trial court's factual findings are supported by substantial evidence." (*Ibid*.) When reviewing the court's findings for substantial evidence, " 'we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].' " (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.) " 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' " (*Ibid*.)

Prejudice for the purposes of laches " 'may be of either a factual nature or some prejudice in the presentation of a defense' " (*Julian Volunteer Fire Co. Assn. v. Julian–Cuyamaca Fire Protection Dist.* (2021) 62 Cal.App.5th 584, 605), such as the unavailability of " 'important evidence' " due to the delay. (*Lent v. California Coastal Com.* (2021) 62 Cal.App.5th 812, 839–840.) A delay-induced expenditure of funds may also constitute prejudice. (See *Austin v. Hallmark Oil Co.* (1943) 21 Cal.2d 718, 735 ["The expenditures in the present case were not induced by the alleged delay in bringing this action, and the mere expenditure of money or effort on the part of a defendant is insufficient to show prejudice."].) As the party asserting the laches defense, Husband bore the burden to "affirmatively demonstrate[ ]" prejudice. (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 (*Miller*) ["Prejudice is never presumed"].)

Husband's burden is complicated by the fact that he asked the trial court to bifurcate the laches issue and try it first. This meant Husband was required to prove prejudice before Wife was required to specify the particulars of her various claims. Thus, so far as the record reveals, Husband does not know (1) which stocks she believes the couple owned,

13

(2) which patents she believes Husband owned, or (3) the amount of royalties she believes Husband retained for himself.

We start with Wife's tax return claim asserted in her 2018 RFO. The court found prejudice on the theory that the passage of the deadline for Husband to amend his tax returns for 2007 and 2008 means that if Wife is owed money on this claim, he may have to pay her directly rather than revise his tax return. We disagree that this establishes prejudice. To start, there was no evidence that any amount Husband owes Wife is any different today than when he filed those returns.[8] Further, all that appears to be required to resolve Wife's tax return claim is an accounting of the parties' tax liabilities from 2007 and 2008 and determining the difference, if any, that Husband would owe Wife as if they had filed joint returns for those years. Our review of the record does not reveal any evidence indicating that Wife's delay in asserting her claim prevents this from being accomplished. If the couple paid more taxes in separate returns than they should have paid in a joint return, the difference can be attributed to Wife in the ultimate accounting without completely denying her any relief.

As for the claims Wife asserted in her 2020 RFO, the court found that Husband is prejudiced by Wife's delay because his memory of specific

_____

[8]    In her 2018 RFO, Wife claims entitlement to interest on any refunds she should have received. If the parties' stipulation in the MSA that she would receive the tax refunds is considered a money judgment, her request for interest is appropriate. (Code of Civ. Proc. § 685.010 [interest accrues on a civil money judgment at a rate of 10 percent per year].) The trial court, however, held that "[t]here is no money judgment in this case." Wife concludes in her opening brief that the stipulation regarding the tax refunds is a money judgment, but the authorities she cites do not support that proposition. (*In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 499 [involving judgments of specific amounts]; Code of Civ. Proc., § 680.270 [defining money judgment].) Thus, we do not consider the accrual of interest in our prejudice analysis.

14

transactions has faded and that documents related to Wife's claims are "no longer available." But Husband failed to identify any specific documents he believes he needs that are no longer available due to the delay. The absence of evidence on this point also undercuts the court's finding that Husband has suffered prejudice because his memory has faded. Husband has not attempted to locate documents that might refresh his recollection, nor does he explain what faded memories might aid his case, particularly given that Wife will ultimately bear the burden of proof on her claims. At this point, Husband's assertion of prejudice appears to be more the product of an assumption rather than a demonstration of the fact. The court thus erred in finding prejudice.

Turning first to Wife's stock claim, we generally agree with the trial court that Husband's recollection was limited when the hearing was conducted and that he did not, at that time, possess any pertinent documents. To support its finding on prejudice as to this claim, the trial court relied on Wife's failure to obtain information in response to the two dozen letters she wrote to companies she thought had relevant information as evidence that the information was not available. The court found that "many of the letters indicated that the records of the companies did not go back that far—further evidence of the prejudice to [Husband.]" Our review of the responses that are in the record leaves us with a different impression, as none of the 14 responding entities represented that documents were not available (although two indicated that records *may* not be available due to the passage of time).

More importantly, however, it was Husband's burden to affirmatively establish prejudice (*Miller*, *supra*, 27 Cal.3d at p. 624), which means he needed to show that the documents he believes he needs are unavailable due

15

to the delay. In our judgment, at a minimum, this requires showing that his reasonable efforts to locate this evidence failed and that there is a nexus between the unavailability of the documents and the delay. In the absence of evidence of any efforts by Husband to attempt to find the documents he urged the trial court to deem unavailable, his assertion of prejudice as to this claim is based on nothing more than an unproven assumption.

The record also does not support a finding of prejudice as to Wife's patent claim. In November 2022, Husband was able to verify the accuracy of a discovery response that identified 10 patents on which he was a named inventor, when they issued, and when and to whom the patent rights were assigned.

Husband's discovery response also pointed Wife to "publicly available documents," and, incidentally, the record contains hundreds of pages of documents that appear to have been obtained from the United States Patent and Trademark Office concerning these patents. During the evidentiary hearing, Husband confirmed that this response was accurate and that he had assigned all his patent rights for nominal payments from the assignees. If Husband's defense on the merits of Wife's patent claim is that he assigned away all his patent rights for nominal amounts, it seems that documents evidencing those assignments are all he needs. Notably, he did not testify that he needed any others. The record therefore does not support the court's finding that Wife's delay prejudiced Husband's defense of her patent claim.

As for Wife's claim for royalties, the MSA provides that the parties are to split evenly the monies Husband earned postseparation on textbooks he authored or contributed to while married. The record contains more than 100 pages of royalty statements from 2012 to 2020, which leaves a three-year gap corresponding to 2009 to 2011 (presumably, he can provide statements from 2021 through 2024). Husband testified that he did not have statements from prior to the couple's separation and that he had asked his business partner to reach out to the textbook companies to determine how much in royalties Husband had earned postseparation. He did not know whether those efforts were successful. Yet Husband was "satisfied" that he had done all he could to find those statements.

We, by contrast, are not. What is missing from the record is evidence that statements for the three-year period between 2009 and 2012 cannot be obtained because of the delay. Husband's affirmative burden to establish prejudice requires a more diligent effort before relevant documents can be deemed unavailable. For example, the record does not reflect that the companies were subpoenaed. Further, there is no evidence that the royalties Husband earned during this three-year gap could not be estimated from the records that are available.[9] Moreover, even if Husband could show that figures for these three years were missing and cannot be reconstructed, it might be a basis for the court to apply laches to deny Wife any payments for *those* years, but not for the years for which there are available records. On these facts, we must reverse the court's finding of prejudice as to Wife's royalties claim.

---

[9] The statements identify the number of units that had been sold since the book was published, the number sold in the reporting period, and the royalty rate Husband earned.

17

With respect to Wife's artwork claim, the court took no testimony on it, which means there is no evidence in the record that Husband can no longer identify the art he possesses that should have been divided. This also means there is no evidence to call into question an accounting of the disputed artwork by Wife that appears in the record. We cannot uphold a finding of fact that lacks any basis in the evidence.

In addition to urging us to affirm the trial court's ruling, Husband contends he was prejudiced because he relied on Wife's inaction in choosing not to pursue his claims for her breaches of the MSA alleged by his attorney in 2010. These appear, at best, to be independent offsets. Husband does not assert that his claims are factually or legally related to Wife's. Nor does he cite legal authority for the principle that his voluntary decision to forego independent claims can constitute prejudice.

But even assuming Husband's theory of prejudice were valid, there are no facts in the record showing any delay-induced obstacles to proving the merits of his offset claims. The only such claim Husband testified about concerned rent he believed Wife owed him for staying in the house he had been awarded. During the evidentiary hearing—which occurred more than a decade after this potential claim accrued—Husband was able to identify the amount he believed Wife owed him, and he appears to have done so based on the terms of the MSA and the time he believed she stayed in the house rent free. In short, it appears Husband has what he needs to prosecute this claim now, should he choose to do so.

Considering that we have reversed the trial court's findings that supported its decision on laches, we must also reject the trial court's weighing of the equities in Husband's favor. (*City of Hesperia*, *supra*, 93 Cal.App.5th at p. 513.) The court wrote, "Had [Wife] given notice to [Husband] of her

18

claims within a reasonable time, [he] could have preserved the evidence needed to rebut her claims. It would be inequitable to allow [her] to remain silent all these years and pursue her claims now that the evidence [he] needs is unavailable." But Wife *did* give Husband notice of her claims—in 2010 by a letter from her attorney—and Husband has made no showing that evidence needed to refute Wife's claims has become unavailable due her delay in asserting them. There is also nothing in the record demonstrating that Husband took any steps to preserve any documents then; if he did not, some of the prejudice he perceives at this stage of the litigation may be self-inflicted.

This is not to say Husband might not be able to show some specific prejudice he has suffered once Wife details her claims, but that has not happened yet.[10] Prior to any trial on the merits of the RFOs, Wife will need to specify the assets she is claiming. At that point, if Husband can establish that (1) he has been unable to obtain additional information related to a specific asset, despite making a reasonable effort to do so, (2) the information is unavailable because of the delay, and (3) the missing information is necessary to rebut Wife's claims, it would be a proper exercise of the trial court's discretion to reconsider whether laches bars her claim as to that asset.

---

[10] Taking Wife's stock claim as an example, in 2017 and 2018, Wife wrote letters to over 20 entities she believed had information related to community property stock. In 2019, Wife's counsel sent Husband's counsel a letter identifying eight entities in which Wife thought the couple had obtained stock in addition to the stocks Husband identified in his predissolution disclosure. A year later, Wife provided in discovery a "partial list of [her] good faith belief community property stock" that identified 51 entities, including all the entities she wrote in 2017 and 2018 and most of the entities she identified in her 2019 letter. Before a merits hearing, by means of a contention interrogatory or otherwise, Wife should be required to specify the particular stocks she claims an interest in. The same is true with respect to the other asset categories, i.e., patents and royalties.

But the present laches ruling cannot stand.  We are guided by the overarching principle that a " ' "defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be 'inequitable' in light of the delay in bringing that claim." ' " (*George, supra*, 45 Cal.App.5th at p. 142.)  On the present record, there has been no showing that it would be inequitable to hear Wife's claims given that we have determined the trial court's findings on prejudice are not supported by the evidence in the record.  Indeed, Husband could *benefit* from Wife's delay if evidence she will need to carry *her* burden of proof no longer exists.  For all these reasons, we reverse the court's order dismissing the entirety of Wife's request to enforce portions of the judgment.

**C.**   ***The court's order denying Wife's requests for fees must also be reversed because it was based substantially on the erroneous conclusion that laches barred her claims.***

Wife also appeals the court's order denying her requests for fees.  Her main arguments are that the court's order (1) was improperly based on the erroneous laches ruling, (2) failed to recognize she relied on loans to pay her legal fees and living expenses, and (3) failed to properly account for the financial disparity of the parties.  For his part, Husband asserts that the order should be affirmed because Wife failed to present adequate evidence that the pursuit of her claims was reasonable or that the fees she was seeking were reasonably necessary.

Sections 2030 and 2032 authorize the court in an enforcement action to "award fees and costs between the parties based on their relative circumstances in order to ensure parity of legal representation in the action." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 974, fn. omitted.)  "When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under

this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties.  If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs." (§ 2030, subd. (a)(2).)  An award of fees is limited to the amount "reasonably necessary" to maintain or defend the proceeding (§ 2030, subd. (a)(1)) and must be "just and reasonable under the relative circumstances of the respective parties."  (§ 2032, subd. (a).)

We review a trial court's decision not to award attorney's fees under section 2030 for abuse of discretion.  (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 469.)  Here, the court denied Wife's requests for fees in large part based on its belief that her substantive claims were "unreasonable" because they were barred by laches.  Because we have reversed the court's laches ruling, its denial of Wife's requests for fees was to some significant extent the product of a legal error.  On this basis alone, the order was an abuse of discretion. (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 592.)  Accordingly, we reverse the court's order denying Wife's requests for fees and remand so it can reconsider the request after addressing the merits of her enforcement claims.  We express no opinion on what the outcome of that reconsideration should be.

21

## DISPOSITION

The court's order denying Wife's request to enforce the judgment on grounds that laches bars all of her claims is reversed. The subsequent order denying her requests for attorney's fees and costs is also reversed. We remand to the trial court with directions to conduct further proceedings consistent with this opinion. Wife shall recover her costs on appeal.

DATO, Acting P. J.

WE CONCUR:


DO, J.


BUCHANAN, J.

22